[No. B058253. Second Dist., Div. One. Sept. 29, 1992.]

MARY HULETT, Plaintiff and Appellant, v.
FARMERS INSURANCE EXCHANGE, Defendant and Respondent.

COUNSEL

Ian Herzog and Amy Ardell for Plaintiff and Appellant.

Waldman & Chuang, A. Douglas Mastroianni and Aviv L. Tuchman for Defendant and Respondent.

OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff Mary Hulett appeals from a summary judgment in favor of defendant Farmers Insurance Exchange (erroneously sued as "Farmers Insurance Company") and orders denying her motions for reconsideration and a new trial.

### STATEMENT OF FACTS

On December 13, 1983, plaintiff's automobile was rear-ended by an automobile driven by Gilda Mavaddat (Mavaddat). Plaintiff, as a result, sustained serious injuries for which she required medical treatment.

Mavaddat was insured by defendant under a policy with limits of $15,000/ $30,000. On April 25, 1984, plaintiff made a written offer to settle and

compromise her claim against Mavaddat by requesting the policy limits of her automobile insurance policy. In response, on July 9, 1984, defendant rejected plaintiff's offer to settle the claim and specifically denied that plaintiff's injuries were equal to the limits of the $15,000/$30,000 insurance policy. Instead, it offered her $8,500 to settle the case. Defendant repeated that offer in a letter dated August 2, 1984.

Plaintiff filed an action against Mavaddat on August 9, 1984. On February 6, 1985, Mavaddat's attorney wrote to plaintiff's counsel informing him Mavaddat had settled with other persons injured in the accident for a total of $17,750. That left "$12,275" [sic] out of the $30,000 per accident policy limits, and he offered that amount to plaintiff to settle her claims; plaintiff rejected this offer. On March 19, 1985, she filed a statutory offer to compromise all her claims in the action for $125,000; this offer was rejected.

A mandatory settlement conference was held on May 22, 1985. The court noted the parties had been unable to reach a settlement in the case, but they agreed to place the case into binding arbitration with Mavaddat admitting liability. The parties further agreed to waive their rights to a jury trial or de novo hearing, and they agreed the arbitration award would not be limited to the $15,000 per person policy limits. During the mandatory settlement conference, Mavaddat's counsel made a $35,000 settlement offer on behalf of defendant Farmers and plaintiff made a $200,000 settlement demand. Based on defendant Farmers' offer, plaintiff's attorney informed Mavaddat's counsel he assumed Farmers had "taken the lid" off Mavaddat's policy.

The arbitration was held on September 13 and 20, 1985. On September 27, 1985, the arbitrator awarded plaintiff $150,000 against Mavaddat. Farmers paid this amount to plaintiff on October 10.

Between May 22 and September 20, 1985, plaintiff was in physical therapy to treat injuries received in the accident. She did not receive any treatment for emotional distress during that time period; while she was aggravated by defendant's actions, there were no physical manifestations which required treatment.

PROCEDURAL BACKGROUND

After defendant Farmers paid the $150,000 arbitration award, plaintiff filed this action against defendant and its agents, Charles Druffel, Thomas Marcellino and Adrian Beach. Her first amended complaint was filed in late November or early December 1988. In it, she alleged causes of action for "breach of covenant of good faith and violation of Insurance Code section 790.03(h)," intentional infliction of emotional distress and conspiracy.

Defendant filed a motion for summary adjudication on November 22, 1989. The motion was denied.

On January 16, 1991, defendant filed a second motion for summary judgment or, alternatively, for summary adjudication of issues. The motion for summary judgment was granted. The "order for summary judgment," which both granted the motion and ordered a summary judgment entered, specified: "[D]efendant . . . has shown by way of admissible evidence and reasonable inferences therefrom not contradicted by other evidences [*sic*] or inferences that plaintiff's First Amended Complaint has no merit and that there is no triable issue of any material fact with respect thereto, and therefore moving party . . . is entitled to summary judgment as a matter of law."

Plaintiff then filed a motion for reconsideration. The motion was denied on the grounds that the motion "was not brought in accordance with [Code of Civil Procedure section 1008, subdivision (a) or (b)] and that there is no good cause to reconsider the previous order of this court." The court further ordered that the previous summary judgment order was to stand and stated "that the Motion for Summary Judgment was based on all the arguments of the moving papers of counsel, the exhibits presented thereto, and that each of the points raised in the opposition to the Motion for Reconsideration filed by [defendant] with respect to the reasons for the granting of summary judgment are adopted herewith and incorporated by this reference as so fully set forth."

Plaintiff also brought a motion to tax costs. It was granted in part and denied in part.

## CONTENTIONS

### I

Plaintiff asserts there is a triable issue of material fact as to whether defendant violated Insurance Code section 790.03.

### II

Plaintiff contends the trial court erred in failing to comply with Code of Civil Procedure section 437c, subdivision (g).

### III

Plaintiff asserts the court's denial of the motion to tax costs was an abuse of discretion.

## DISCUSSION

Plaintiff asserts there is a triable issue of material fact as to whether defendant violated Insurance Code section 790.03. We agree.

Summary judgment properly is granted if the evidence submitted on the motion establishes, as a matter of law, there is no triable issue as to any material fact. (Code Civ. Proc., § 437c, subd. (c).) ■ Summary judgment may be granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134].)

"All doubts about granting such a motion must be resolved against the moving party, who bears the burden of producing evidence which establishes the invalidity of the claims of the adverse party." (*Cummings* v. *Fire Ins. Exchange* (1988) 202 Cal.App.3d 1407, 1414 [249 Cal.Rptr. 568]; see also *Spradlin* v. *Cox* (1988) 201 Cal.App.3d 799, 805 [247 Cal.Rptr. 347].) ■ The defendant seeking summary judgment must " 'conclusively negate a necessary element of plaintiff's case or establish a complete defense, and thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial.' " (*Steingart* v. *White* (1988) 198 Cal.App.3d 406, 409 [243 Cal.Rptr. 678].) Therefore, as stated in *Barnes* v. *Blue Haven Pools* (1969) 1 Cal.App.3d 123, 127 [81 Cal.Rptr. 444], it is insufficient to merely demonstrate that the plaintiff lacks evidence to support his claim and might be subject to nonsuit if the case were then tried. Absent proof "negat[ing] the matters which the resisting party would have to prove at the trial"—in this case, violation of Insurance Code section 790.03, intentional infliction of emotional distress, and conspiracy—summary judgment is improper without regard to the strength or weakness of the plaintiff's responsive showing. (1 Cal.App.3d at pp. 127-128.)

■ The fact that the party resisting summary judgment may have the burden of proof at trial is of no assistance to the moving party. "There is nothing in the statute which lessens the burden of the moving party simply because at the trial the resisting party would have the burden of proof on the issue on which the summary judgment is sought to be predicated. In such a case, on the motion for summary judgment, the moving party must generally negative the matters which the resisting party would have to prove at the trial. [Citations.]" (*Barnes* v. *Blue Haven Pools, supra*, 1 Cal.App.3d at p. 127.)

■ After examining the facts before the trial court on a motion for summary judgment, an appellate court independently determines their effect

as a matter of law. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203]; *Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].) The appellate court applies the same legal standard as did the trial court. " '[R]eview of the trial court's determination involves pure matters of law: Reassessment of the legal significance of the documents upon which the trial court acted.' " (*Fireman's Fund Ins. Co.* v. *Fibreboard Corp.* (1986) 182 Cal.App.3d 462, 466 [227 Cal.Rptr. 203]; *LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744 [176 Cal.Rptr. 224].) Moreover, an appellate court is not bound by the trial court's stated reasons, if any, supporting its ruling. The appellate court reviews the ruling, not the rationale. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1087 [258 Cal.Rptr. 721].)

In her complaint, plaintiff alleged violations of Insurance Code section 790.03, subdivisions (h)(2), (3), (5) and (13). These provide that an insurance company is prohibited from "[k]nowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: . . . [¶] (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies. [¶] (3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies. . . . [¶] (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. . . . [¶] (13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to facts or applicable law, for the denial of a claim or for the offer of a compromise settlement."

On appeal, plaintiff asserts only that there is a triable issue of material fact as to whether defendant violated subdivision (h)(5) of Insurance Code section 790.03 (hereinafter section 790.03(h)(5)). If there is a triable issue of material fact on this one basis for liability, then summary judgment was not properly granted. (*Steingart* v. *White, supra,* 198 Cal.App.3d at p. 409.)

Section 790.03(h)(5) imposes on an insurance company the active duty to investigate and attempt to settle a claim by making and accepting reasonable settlement offers once liability has become reasonably clear. (See *Schlauch* v. *Hartford Accident & Indemnity Co.* (1983) 146 Cal.App.3d 926, 935-936 [194 Cal.Rptr. 658]; *Pray By and Through Pray* v. *Foremost Ins. Co.* (9th Cir. 1985) 767 F.2d 1329, 1330 [construing California law].) A third party claimant may sue an insurer for unfair settlement practices in violation of section 790.03(h)(5). The duty imposed under that statute runs directly to

a claimant and is not dependent on a violation of the insurer's duty to its insured. A new duty is not being imposed on insurers by section 790.03(h)(5), but a different means of enforcement is being provided. (*Schlauch, supra,* at p. 934)[1]

■ Plaintiff claims defendant violated section 790.03(h)(5), in that defendant failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of a case in which liability was at all times reasonably clear and eventually was admitted and in which the policy limits were unquestionably removed. The facts concerning defendant's attempts at settlement are as follows: On April 25, 1984, plaintiff made a written offer to settle and compromise her claim against Mavaddat by requesting the policy limits of her automobile insurance policy. On July 9, 1984, defendant rejected plaintiff's offer to settle the claim and specifically denied that plaintiff's injuries were equal to the limits of the $15,000/$30,000 insurance policy. Instead, it made a settlement offer of $8,500, which plaintiff rejected.

On August 9, 1984, plaintiff filed an action against Mavaddat for damages caused by the collision. On February 6, 1985, Mavaddat's attorney offered to settle the case for $12,275—the amount purportedly remaining from the policy limits after settlement with other injured persons; plaintiff rejected this offer as well. On March 19, 1985, plaintiff filed a statutory offer to compromise all her claims in the action for $125,000. The offer to compromise was rejected.

Later, on May 22, 1985, all parties stipulated to liability and resolution of the action by binding arbitration. Inasmuch as defendant's rejection of plaintiff's offer to settle for the policy limits opened defendant up to liability to Mavaddat for an award in excess of the policy limits, it was agreed the award could exceed the $15,000 per person policy limits. Mavaddat's attorney then made a $35,000 settlement offer on behalf of defendant, but plaintiff made a $200,000 settlement demand, and no settlement was reached. Ultimately, the arbitrator awarded plaintiff $150,000.

There is no question but that at all times liability was reasonably clear, creating a duty for defendant to attempt in good faith to effectuate a prompt, fair and equitable settlement of plaintiff's claims. (§ 790.03(h)(5).) There was a dispute as to the amount of the settlement to which plaintiff was

---

[1]That means of enforcement has since been removed by *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58], holding Insurance Code section 790.03 does not create a private right of action against an insurer for violation of its provisions. (At p. 304.) Application of *Moradi-Shalal* was made prospective only, allowing actions brought under Insurance Code section 790.03 filed before the opinion became final, as the parties agree this one was, to proceed. (46 Cal.3d at p. 305.)

entitled, and there is no requirement that an insurance company reach an unfair settlement merely to settle the case. (See *Mercury Casualty Co.* v. *Superior Court* (1986) 179 Cal.App.3d 1027, 1035-1036 [225 Cal.Rptr. 100].) Section 790.03(h)(5) requires only an *attempt* to reach a settlement.

However, that attempt must be in good faith. Here, when plaintiff made her original policy limits demand, defendant offered her only $8,500. Defendant's offer increased to $12,275 after the action was filed against Mavaddat and to $35,000—above the policy limits—at the mandatory settlement conference. Ultimately, plaintiff was awarded $150,000. The amount of the award supports an inference defendant's earlier, much lower, settlement offers were made in bad faith, defendant making no attempt to effectuate a *fair and equitable* settlement. (See *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 431 [58 Cal.Rptr. 13, 426 P.2d 173].) The presence of inferences supporting a judgment in favor of plaintiff is sufficient to defeat a summary judgment in favor of defendant. (Code Civ. Proc., § 437c, subd. (c); *Steingart* v. *White, supra,* 198 Cal.App.3d at p. 409.)

■ Defendant has suggested it cannot be liable under section 790.03(h)(5), in that it made a settlement offer above the policy limits at the May 22, 1985, mandatory settlement conference. However, as stated in *Schlauch* v. *Hartford Accident & Indemnity Co., supra,* 146 Cal.App.3d at pages 935-936, while an insurer may make an effort to correct an initial failure this does not mean that liability and damages for the preceding breach are cured by its subsequent offer of settlement: " '[e]ven if the insurer attempts to resume negotiation by a belated offer of the policy limit, that action does not necessarily relieve it of the onus of an earlier bad faith rejection.' " (Quoting from *Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788, 798 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142].)

When defendant refused to pay the policy limits demand, it, in order to protect its insured, in essence wrote a new policy without limits and offered plaintiff an amount in excess of the original policy limits. Defendant's act to protect its insured did not change its obligations under section 790.03(h)(5) to negotiate reasonably and fairly in a case where liability was at all times reasonably clear. Certainly, it did not absolve defendant of liability for any earlier bad faith refusal to make a fair settlement offer.

Additionally, that defendant ultimately paid the $150,000 award entered against its insured, Mavaddat, an award which was in excess of the policy limits, in no way vitiates any previous bad faith conduct in which it may have engaged. As stated in *McCormick* v. *Sentinel Life Ins. Co.* (1984) 153 Cal.App.3d 1030, 1051 [200 Cal.Rptr. 732]: "[f]ollowing the lead of the

Court of Appeal in *Schlauch*, we held an 'ultimate tender of benefits . . . does not defeat [a cause] of action for insurance bad faith or emotional distress. Rather, it merely mitigates damages.' [Citation.]" (See also *Schlauch v. Hartford Accident & Indemnity Co., supra*, 146 Cal.App.3d at p. 936.)

Defendant claimed in its original summary judgment motion that its payment of an award in excess of the policy limits barred plaintiff's bad faith action. The court disagreed, stating that "[n]o benefit was conferred on plaintiff when defendant refused to pay the policy limits of $15,000.00. Subsequently, to protect itself from bad faith claims, Farmers opened up the policy and agreed to a binding arbitration resulting in an award of $150,000.00. It was this subsequent decision of Farmers to protect itself from a bad faith claim by its own insured, if anything, that allowed plaintiff to recover $135,000.00 above the policy limit. . . . Plaintiff has not been enriched but instead has received just compensation for her damages from the automobile accident. Plaintiff has received no compensation from defendant's alleged bad faith behavior."

In *Beckham v. Safeco Ins. Co. of America* (9th Cir. 1982) 691 F.2d 898, the Ninth Circuit, construing California law, reversed a summary judgment of the district court in favor of Safeco. The ground for the reversal was that a triable issue of material fact existed as to whether Safeco failed to negotiate in good faith. This was so even though Safeco had paid a judgment in excess of the policy limits. The facts of *Beckham* are as follows: Joanne Beckham was injured when struck by an automobile driven by Nellie Mankin. Safeco assumed Mankin's defense, with total liability coverage for Mankin of $1 million. Prior to trial, Safeco made a settlement offer of $225,000, plus an annuity, but Beckham rejected the offer and demanded the full policy limit of $1 million. Safeco rejected this demand, the case was tried and a jury returned a verdict for Beckham of $1.5 million which Safeco paid. (At p. 900.)

Beckham brought a bad faith action against Safeco, alleging Safeco had engaged in unfair settlement practices in violation of Insurance Code section 790.03, subdivisions (h)(2), (3), (5) and (13). (*Beckham, supra*, 691 F.2d at p. 900.) The district court granted Safeco's motion for summary judgment. (*Id.* at p. 901.) However, liability in the underlying action was heavily disputed. There was conflicting testimony on whether Beckham or Mankin had run a red light. The appellate court held there was a genuine dispute as to whether Mankin's liability for the accident was reasonably clear prior to trial; it therefore reversed the summary judgment on Beckham's claim for violation of section 790.03(h)(5). (691 F.2d at pp. 902-903.)

While here liability was not in dispute, defendant similarly rejected plaintiff's policy limits demand, and plaintiff obtained $150,000 in the binding arbitration which disposed of the personal injury case. Then defendant paid the excess award. As the decision by Safeco to pay the $1.5 million judgment ($500,000 more than the policy limits) in no way compensated Beckham for violations of the Insurance Code, defendant's decision here to pay the excess award in the personal injury case in no way compensated plaintiff for any bad faith behavior toward her.

Defendant suggests the issue presented to this court is "How did the parties in the *Hulett* v. *Mavaddat* case decide to resolve their differences?" This is not the real issue. The agreement by plaintiff and Mavaddat to decide the underlying action by binding arbitration rather than a jury trial is irrelevant to the determination of the question before this court, whether defendant breached section 790.03(h)(5) by refusing to attempt to effectuate a prompt, fair and equitable settlement.

Defendant also claims the instant case bears a "striking resemblance" to *Carlile* v. *Farmers Ins. Exchange* (1985) 173 Cal.App.3d 975 [219 Cal.Rptr. 773]. This claim is incongruous. *Carlile* dealt with the limited issue of whether an insurer was liable for bad faith when the insurance policy had a clause allowing the insured to refuse to consent to a settlement. (At p. 977.)

In *Carlile*, a hospital was sued for damages. The hospital's administrator refused to consent to a settlement, believing the hospital was not negligent and would prevail at trial. This was despite the fact there were strong indications there was liability to the plaintiff. The hospital's administrator was wrong. Liability was found at trial, and a third party bad faith action ensued. (173 Cal.App.3d at p. 978.)

On appeal, the issue was whether the insurance company could be sued for refusal to settle when prevented by the insured under a consent clause in its contract. The court held, as a matter of law, the insurer was not liable for adhering to the demands of its contract. (*Carlile* v. *Farmers Ins. Exchange, supra*, 173 Cal.App.3d at p. 977.) However, the issue presented by this case was narrow in scope; it dealt only with insurance policies with consent clauses. (*Ibid.*)

Farmers argues that "[p]laintiff in the *Carlile* case, as the plaintiff in this case, misapplies or misuses the provisions of the contract not intended for their benefit coupled with the manufactured argument of near strict liability on a carrier with respect to settlement of a third party claim." However, the "provision of the insurance contract not intended for her benefit" plaintiff

attempted to enforce in *Carlile* had to do with submitting the matter to arbitration. (*Carlile* v. *Farmers Ins. Exchange, supra,* 173 Cal.App.3d at p. 981.) Here, plaintiff is not attempting to enforce any provisions of Mavaddat's insurance contract but the provisions of section 790.03(h)(5); *Carlile* is factually distinguishable. Furthermore, plaintiff has never maintained that a carrier has "strict liability" with respect to the handling of a claim. Rather, she has asserted that section 790.03(h)(5) required defendant to make a reasonable, good faith effort to settle her claim, and it failed to do so in this case.

Defendant further attempts to defeat plaintiff's claim by citing to *Schlauch* v. *Hartford Accident & Indemnity Co., supra,* 146 Cal.App.3d 926. However, the *Schlauch* case actually supports plaintiff's claim. Schlauch attended a Halloween party held at the home of his friend Bruce Boal's parents. The Boals were insured by Hartford for $100,000. Schlauch alleged the Boals negligently served him alcohol then allowed Schlauch and his friends to leave the premises, knowing they would operate a motor vehicle while intoxicated. A single-car accident ensued; Schlauch became a permanent quadriplegic as a result of the accident. (*Id.* at pp. 929-930.)

Less than two months after the accident, Schlauch and other plaintiffs made a joint demand upon Hartford for the $100,000 policy limits. Hartford did not tender the policy limits but waited until July of the following year to file an interpleader action and tender the full policy. Schlauch pursued his personal injury action against the Boals and obtained a jury verdict of $1,249,136. This amount was less than Schlauch had received in settlement from other defendants, and a net verdict was entered in his favor for zero dollars plus costs. (*Schlauch, supra,* 146 Cal.App.3d at p. 930.)

Schlauch then filed an action against Hartford, alleging Hartford had violated various subsections of Insurance Code section 790.03. The complaint also contained a cause of action for intentional infliction of emotional distress. Following the sustaining of Hartford's demurrer, the action was dismissed. (*Schlauch, supra,* 146 Cal.App.3d at pp. 930-931.) On appeal, Hartford argued a net zero judgment precluded a cause of action against it, while Schlauch argued the amount of the judgment and the belated tender of the policy limits were irrelevant. (*Id.* at pp. 934-935.) The court rejected both of these arguments and held that Schlauch could maintain his action for breach of the Insurance Code against Hartford; however, the doctrine of mitigation of damages applied to his third party bad faith suit. The court additionally held a claimant may recover damages which accrue before the point at which an insurer rectifies a violation of duties pursuant to Insurance Code section 790.03. (*Id.* at p. 936.)

In the instant case, defendant not only may have committed the same type of bad faith refusal to live up to its duties under the Insurance Code, as Hartford did in *Schlauch*, it failed to pay a claim when liability was clear and exposed its insured to an excess judgment of $150,000. Defendant did pay this judgment in order to protect itself from a bad faith suit from Mavaddat, but this payment in no way compensated plaintiff for any prior bad faith violation of the Insurance Code. It is this alleged bad faith violation of the Insurance Code which may be compensable (*Schlauch, supra,* 146 Cal.App.3d at p. 936) and for which plaintiff seeks recovery.

Defendant failed to carry its initial burden on summary judgment. A defendant moving for summary judgment has the burden of producing evidence establishing that the plaintiff's action is without merit on any legal theory. If the moving party fails to produce such evidence, the adverse party has no burden to demonstrate the validity of his or her claim and the court must deny the motion. (*Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 41 [147 Cal.Rptr. 565]; *Barnes* v. *Blue Haven Pools, supra,* 1 Cal.App.3d at p. 127.) Inasmuch as there is a triable issue of material fact as to whether defendant's treatment of plaintiff's claim violated section 790.03(h)(5), the trial court erred in granting defendant summary judgment.[2]

The summary judgment is reversed. The appeals from the orders denying plaintiff's postjudgment motions are dismissed. Plaintiff to recover costs on appeal.

Ortega, J., and Aranda, J.,* concurred.

A petition for a rehearing was denied October 28, 1992, and respondent's petition for review by the Supreme Court was denied December 17, 1992. Panelli, J., was of the opinion that the petition should be granted.

---

[2]In view of this conclusion and the necessity that the summary judgment be reversed, we need not address the remainder of plaintiff's contentions. Plaintiff's appeals from the orders denying her motions for reconsideration and a new trial are also moot and may be dismissed.

*Judge of the Municipal Court for the South Bay Judicial District sitting under assignment by the Chairperson of the Judicial Council.