[No. F019607. Fifth Dist. Sept. 20, 1994.]

WILLIAM EVANS et al., Plaintiffs and Appellants, v.
CALIFORNIA TRAILER COURT, INC., et al., Defendants and
Appellants.

## Counsel

Brian C. Davis for Plaintiffs and Appellants.

Kroll, Loeffler & Waggoner, Waggoner & Loeffler, Susan E. Burns and Michael G. Loeffler for Defendants and Appellants.

## Opinion

**THAXTER, J.**—We decide here that the antideficiency statutes do not bar an action under the following circumstances:

1) The seller/beneficiary holds two trust deeds on the same real property, each securing a separate note for $300,000;

2) The seller/beneficiary reacquires the property at a nonjudicial foreclosure sale of the senior deed of trust with a credit bid which is less than the full amount of indebtedness secured by the two deeds of trust; and,

3) The action seeks damages from the buyers/trustors on various tort theories.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs William and Peggy Evans (plaintiffs or Evans) sold their trailer park business and property to defendant California Trailer Court, Inc. (CTCI), taking back two promissory notes. Each note was secured by a separate deed of trust on the real property. CTCI made payments on the notes until it transferred the property to a third party. The third party defaulted on both notes.

Plaintiffs filed this action against CTCI, its president and sole shareholder Gary Trimble (collectively defendants), and others seeking contract and tort damages. They also exercised their power of sale conferred by the first deed of trust and purchased the property for $314,901, an amount equal to the balance due on the first note plus foreclosure costs.

According to the allegations of plaintiffs' first amended complaint, in May 1987 the plaintiffs agreed to sell to CTCI certain real property, together with their mobilehome park business and related personal property, and to give a covenant not to compete, all for $600,000. The agreement allocated $300,000 of the price to the real property and the balance to the covenant not to compete. CTCI signed two $300,000 promissory notes in favor of plaintiffs.[1] Each note was payable in monthly installments of $2,632.50 each. The sales contract includes a nonassignment clause, an attorney fees provision, a promise by CTCI to maintain the property in good repair, and an assignment of rents clause. Trimble, the alleged alter ego of CTCI, signed a personal guaranty for the monthly payments.

In December 1990, without Evans's knowledge or consent, CTCI transferred the property to C.S. Corporation.

*First Cause of Action:* CTCI breached the purchase agreement by failing to pay on the promissory notes, failing to pay taxes and utility charges, failing to notify Evans that it intended to transfer title to a third party, and by allowing the property to become seriously dilapidated. Evans suffered damages of $500,000 as a result of the breaches. Trimble, the alter ego of CTCI, also is liable for these damages.

---

[1]The agreement does not indicate whether the two promissory notes were to be secured or unsecured. The complaint makes oblique references to two separate deeds of trust. In argument before the trial court plaintiffs' counsel expressly represented that his clients "took back two $300,000.00 notes and deeds of trust." Although the deeds of trust are not part of the record on appeal, we interpret counsel's statement, and similar statements in the appellate briefs, as a concession that the deeds of trust encumbered the same property.

*Second Cause of Action:* In December 1990, CTCI breached the agreement by conveying the property to C.S. Corporation without Evans's knowledge or consent. As a result of this breach, under the terms of the agreement, Evans were entitled to rents paid by the tenants from the date of the unauthorized conveyance. CTCI and Trimble, as the alter ego of CTCI, converted those rental payments to their own use.

*Third Cause of Action:* CTCI and Trimble fraudulently promised to pay Evans $600,000 for the property, told Evans not to record one of the $300,000 deeds of trust until a later date to be agreed upon by the parties, and promised to maintain the property in good repair. Evans reasonably relied on the representations and transferred the property to CTCI. As a result of defendants' fraud, Evans were forced to expend approximately $100,000 to recover the property, secure unpaid rents, and make necessary repairs. In addition, as a result of defendants' fraud, the value of the property "seriously decreased."

*Fourth Cause of Action:* At the time of purchase, CTCI and Trimble negligently misrepresented they would pay the full purchase price, the second $300,000 deed of trust would be recorded at a later date, and they would properly maintain the property. As a result, Evans suffered damages of $600,000.

*Fifth Cause of Action:* Between September and December 1990, Trimble engaged in a number of acts designed to, and which did, cause Evans mental distress. Those acts included discontinuing utilities, cutting electric wires to the premises, failing to pay taxes and other obligations, causing the property to deteriorate, wrongfully transferring the property and attempting to encumber it, and fraudulently modifying his personal guaranty.

*Sixth Cause of Action:* Defendant Anthony Drew Rowe,[2] an attorney who acted as escrow officer for the sale, negligently performed his duties by failing to properly draft documents, obtain a personal guaranty from Trimble, and prepare and have executed an all-inclusive deed of trust. As a result, Evans suffered damages of $300,000.

All defendants filed general denial answers and asserted sundry affirmative defenses, including that all of plaintiffs' claims were barred by the antideficiency statutes.

On the first day of trial, CTCI and Trimble sought judgment on the pleadings on the ground plaintiffs' first five causes of action were barred by

---

[2]Although Rowe appeared below and obtained judgment on the pleadings, he has not appeared in this appeal.

the antideficiency statutes (Code Civ. Proc.,[3] §§ 580b, 580d), and the one-action rule embodied in section 726. During argument of the motion, the defendants requested that the court judicially notice a recorded trustee's deed. Plaintiffs' counsel stated he had no objection to the request. The deed, dated May 20, 1991, and recorded the following day, reflected that Chicago Title Company, as trustee under a deed of trust executed by CTCI, conveyed title of the real property to plaintiffs following a trustee's sale pursuant to the power of sale contained in the deed of trust. The deed reflects that the amount of the unpaid debt was $314,901.67 and that amount was paid by plaintiffs.[4]

At the conclusion of the hearing the trial court granted judgment on the pleadings for CTCI and Trimble on the first five causes of action. It then did likewise for Rowe on the sixth cause of action.

Thereafter, the court heard motions by all defendants for awards of attorney fees (in the aggregate amount of over $53,000) as costs and as sanctions under section 128.5. By minute order the court granted the motion, awarding fees of $6,000 in favor of the attorneys for CTCI and Trimble and $750 in favor of the attorney for Rowe.

The plaintiffs filed a timely appeal from the entire judgment. CTCI and Trimble cross-appealed from the order awarding them only $6,000 in attorney fees.

## Discussion

1. *Standard for review and matters properly considered in reviewing judgment on the pleadings*

A motion for judgment on the pleadings is the equivalent of a general demurrer but is made after the time for demurrer has expired. The rules governing demurrers apply. (*People* v. *$20,000 U.S. Currency* (1991) 235 Cal.App.3d 682, 691 [286 Cal.Rptr. 746].) The grounds for a motion for judgment on the pleadings must appear on the face of the challenged complaint or be based on facts which the court may judicially notice. (§ 438, subd. (d); *Tiffany* v. *Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 225 [162 Cal.Rptr. 669].) On review we must determine if the complaint states a cause of action as a matter of law. "A judgment on the

---

[3]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[4]There is no direct evidence that the deed of trust referred to in the trustee's deed was one of the two deeds of trust mentioned in the complaint, or, if so, which one. Both in the trial court and on appeal, however, all parties describe it as the "senior" deed of trust given by the defendants to the plaintiffs.

pleadings admits the truth of all material facts alleged in the complaint." (*Ramirez* v. *USAA Casualty Ins. Co.* (1991) 234 Cal.App.3d 391, 397 [285 Cal.Rptr. 757].)

■ Plaintiffs initially complain that in ruling on the motion the trial court considered matters beyond the pleadings. To the extent this argument may be directed to the trustee's deed of which the court took judicial notice, it is unavailing. On a motion for judgment on the pleadings, a court may take judicial notice of something that cannot reasonably be controverted, even if it negates an express allegation of the pleading. (*Columbia Casualty Co.* v. *Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457, 468-469 [282 Cal.Rptr. 389].)

The court may take judicial notice of recorded deeds. (*Maryland Casualty Co.* v. *Reeder* (1990) 221 Cal.App.3d 961, 977 [270 Cal.Rptr. 719]; *Cal-American Income Property Fund II* v. *County of Los Angeles* (1989) 208 Cal.App.3d 109, 112, fn. 2 [256 Cal.Rptr. 21].) In this case, CTCI and Trimble asked the court to judicially notice the recorded trustee's deed pursuant to Evidence Code section 452, subdivision (g). Plaintiffs stated they did not object to the request and the court took judicial notice of the deed.

The court did not err or abuse its discretion in granting the request. The trustee's deed does not negate any express allegation of the amended complaint, but even if it did its existence and authenticity cannot reasonably be controverted. Plaintiffs conceded the truth of the matters evidenced by the deed: they made a credit bid on their senior deed of trust and reacquired the property at the trustee's sale. Such admissions or concessions of matters which cannot reasonably be controverted are properly considered on a motion for judgment on the pleadings. (*Columbia Casualty Co.* v. *Northwestern Nat. Ins. Co.*, *supra*, 231 Cal.App.3d at p. 468.)[5]

2. *Plaintiffs are not precluded from pursuing tort claims after a nonjudicial foreclosure of their senior deed of trust*

■ The court below ruled that all of the plaintiffs' causes of action were barred by the antideficiency legislation in view of the nonjudicial foreclosure of the plaintiffs' senior deed of trust. We will conclude that while that ruling may have been correct as to the plaintiffs' contract causes, it was incorrect as to the tort causes.

The foreclosure statutes at issue, sections 580b, 580d and 726, restrict a creditor's right to enforce a debt secured by a deed of trust on real property.

---

[5]The same holds true as to other concessions made by plaintiffs in arguing the motion. (See fns. 1 and 4, *ante*.)

The history and purpose of the statutory scheme were chronicled by the Supreme Court in *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d. 590, 600-602 [125 Cal.Rptr. 557, 542 P.2d 981]. Section 726 embodies the "one-action rule" which requires that a creditor look first to the security before attempting to obtain a personal judgment against the debtor. If the security is insufficient, the creditor's right to a "deficiency" judgment against the debtor is governed by sections 580b and 580d. (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 38-39 [27 Cal.Rptr. 873, 378 P.2d 97].) Section 580b bars a deficiency judgment after foreclosure of a purchase money mortgage in specified instances; section 580d bars a deficiency judgment on a note after sale under power of sale in the deed of trust.

Here, the plaintiffs' pleadings and concessions establish that at least one of the deeds of trust given to them by the defendants was "to secure payment of the balance of the purchase price of that real property" and thus was within the purview of section 580b. If that were the only antideficiency statute applicable, we would have to consider whether the record shows that one note was for the covenant not to compete, rather than reflecting the real property's purchase price, and, if so, whether that note could be subject to section 580b. We need not do so, however, because section 580d is also clearly applicable.

By conceding that they foreclosed their senior deed of trust through exercise of its power of sale, the plaintiffs brought themselves directly within the scope of section 580d and are barred from recovering a deficiency judgment on the note which that deed of trust secured. Whether the plaintiffs were seeking a deficiency judgment in this action is the issue upon which the motion below, and this appeal, turns.

### Breach of Contract Claims

Plaintiffs alleged that defendants breached the contract of sale in several regards.

 When a seller has conveyed property to a buyer and has taken back a deed of trust which secures the buyer's purchase money note, the contract of sale has been executed. Upon default by the buyer, the rights of the parties are no longer determined by the sales contract but by the statutory provisions respecting foreclosures. (*Smith* v. *Allen* (1968) 68 Cal.2d 93, 95-96 [65 Cal.Rptr. 153, 436 P.2d 65].) Plaintiffs' breach of contract claims are thus governed by the foreclosure statutes.

The trustee's deed judicially noticed below refers only to foreclosure of the plaintiffs' senior deed of trust. There were no allegations, or judicially

noticed documents, concerning the junior deed of trust. On a motion for judgment on the pleadings, like a demurrer, all reasonable inferences must be drawn in favor of the pleader. (*Crain* v. *Electronic Memories & Magnetics Corp.* (1975) 50 Cal.App.3d 509, 512 [123 Cal.Rptr. 419].) Thus, we infer that the junior deed of trust was not foreclosed and that the plaintiffs' security interest under it was extinguished upon foreclosure of the senior lien.

On its face, this state of facts makes the plaintiffs "sold-out juniors." Normally, a sold-out junior lienholder is entitled to sue directly on the debt. (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35.) However, when the same party holds separate deeds of trust on the same real property and forecloses under the senior deed of trust's power of sale, thereby eliminating the security for its junior deed of trust, the two secured obligations are treated as one. Thus, section 580d bars recovery of any balance owing on the obligation secured by the junior deed of trust. (*Simon* v. *Superior Court* (1992) 4 Cal.App.4th 63, 66 [5 Cal.Rptr.2d 428].)

In *Simon,* a bank loaned $1,575,000 to borrowers in exchange for two promissory notes which were secured by separate deeds of trust on the same real property. After the borrowers defaulted on the senior note, the bank effected a nonjudicial foreclosure under the power of sale conferred by the senior lien. The bank then filed suit against the borrowers for amounts due under the junior note. (4 Cal.App.4th at p. 66.)

The court held that section 580d barred the bank's action. (*Simon* v. *Superior Court, supra,* 4 Cal.App.4th at p. 66.) It reasoned that the antideficiency statutes were to be construed liberally to effectuate the legislative purpose behind them, including the policy of providing parity in the creditors' remedies of private and judicial foreclosure sales. If the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable title, he must forego the right to a deficiency judgment. In either case the debtor is protected. (*Id.* at pp. 68-70, 77.) The purpose of achieving a parity of remedies would not be served by applying section 580d against a nonselling junior lienor. The junior lienor may redeem from a senior judicial sale or may obtain a deficiency judgment. After a senior nonjudicial sale, the junior has no right to redeem. This disparity of rights would be aggravated were the junior also denied a right to a deficiency judgment by section 580d. (4 Cal.App.4th at p. 77, citing *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d at pp. 43-44.) Thus, equitable reasons permit sold-out juniors to pursue an action against the debtor on the junior obligation because a foreclosure sale by a senior lienholder exhausts their security through no act of their own. (*Simon, supra,* at pp. 71-72, 76.)

On the other hand, the *Simon* court reasoned, parity of creditor's remedies would not be realized if the bank was permitted to make successive loans secured by a senior and junior deed of trust on the same property, utilize its power of sale to foreclose the senior lien, thereby eliminating the borrowers' right to redeem, and thereafter obtain a deficiency judgment against the debtors on the junior obligation whose security the bank chose to eliminate. (*Simon* v. *Superior Court, supra,* 4 Cal.App.4th at p. 77.)

The *Simon* court concluded the bank was not a sold-out junior lienor, even though it lost its security for the junior note, since its own action of foreclosing the senior lien caused the loss of security. Further, its position as dual lienholder eliminated the possibility that it might end up with no interest in the secured property. (4 Cal.App.4th at pp. 71-72.) Therefore, the equitable principles which permit the third party junior to pursue an action on the secured debt do not apply to a lender who chooses to encumber the same property. To conclude otherwise would "deal a mortal blow to the antideficiency legislation of this state." (*Id.* at pp. 77-78.)

██ Plaintiffs are in the same position as the bank was in *Simon*. They held two deeds of trust on the same property and exercised their power of sale under the senior deed of trust, thereby wiping out any lien of the junior. They are not entitled to the equitable rule allowing a sold-out junior to seek judgment for the obligation secured by the junior deed of trust.[6] Thus, to the extent plaintiffs' breach of contract claims seek recovery of the balance owing on the obligation secured by the junior deed of trust, such claims are barred by the antideficiency statutes.

Plaintiffs do not contend otherwise. They disclaim any effort to recover directly on the note secured by the junior deed of trust. Instead, they claim they are entitled to recover damages from the defendants under the various tort theories alleged in the amended complaint.

*Tort Claims*

 The antideficiency statutes do not apply to tort actions against the trustor that seek damages resulting from his or her tortious conduct, even

[6]In *Simon* the bank's two trust deeds were recorded the same day and, so far as appears in the opinion, were not separated by any intervening liens. We have some question whether the *Simon* rule should apply when one secured party holds two deeds of trust on the same property, but another lien intervenes. In such a case the doctrine of merger, which was relied on to some extent by the *Simon* court, should not apply. (See 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 9:39, p. 108.) Although the record before us does not affirmatively show that no liens intervened between the plaintiffs' two deeds of trust, we will not address the issue because of the plaintiffs' express representation they are not seeking to enforce the obligation secured by their junior lien.

though the amount of damages received may be similar to the amount that would be recovered in an action on the note. (4 Miller & Starr, Cal. Real Estate, *op. cit. supra*, § 9:157, p. 533.) Plaintiffs contend their claims for waste, conversion and fraud are viable under this rule.

*Waste*

In their first, second and fifth causes of action, plaintiffs claim damages from CTCI's failure to pay taxes and utility charges, their failure to inform plaintiffs of their intent to transfer the property to a third party who allowed the property to deteriorate, and their own acts which caused the property to deteriorate. The alleged acts and omissions constitute various forms of waste. ▮▮▮ Waste is conduct, by both commission and omission, on the part of the person in possession of the property which impairs the value of the lender's security. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at pp. 597-598.)

▮▮▮ The antideficiency statutes do not apply when the borrower has committed "bad faith" waste resulting in impairment of the security. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 604.) ▮▮▮ Bad faith waste is reckless, intentional or malicious injury to the property and is distinguishable from waste caused by mortgagors who are subject to the economic pressures of a market depression. (*Id.* at pp. 603-604.)

▮▮▮ In this case the trial court's written judgment recites two reasons for the conclusion that plaintiffs could not proceed to trial to recover damages for waste. First, the judgment states that plaintiffs did not allege bad faith waste. Second, the "more critical" defect was the effect of plaintiffs' "full credit bid" on their senior deed of trust which, in the trial court's opinion, precluded recovery as a matter of law. We disagree with the trial court as to both of its stated reasons.

The first amended complaint alleged that the defendants allowed the property "to become seriously dilapidated and in a state of gross disrepair" and that all of the acts were alleged to have been "wilfull [*sic*], wanton, malicious and oppressive." Drawing all inferences in favor of the pleader, we believe these allegations sufficiently raised the issue of bad faith waste.[7]

The second reason given by the trial court for its ruling on the waste claims requires further discussion. In sum, the court below, relying on

---

[7]In their fifth cause of action, plaintiffs also alleged that Trimble willfully and maliciously cut off utilities and cut electrical and other utility wires to the property. While this cause of action appears to have been one seeking only damages for intentional infliction of emotional

*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590, concluded that because they made a "full credit bid" when foreclosing their senior deed of trust, plaintiffs eliminated any claims for damages arising from waste.

■ The measure of damages for waste is the amount of the impairment of the security, that is, the amount by which the value of the security is less than the outstanding indebtedness. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 606.)

When the beneficiaries purchase the property securing the debt by entering a full credit bid (the full amount of the debt owing plus costs of the sale) at a trustee's sale, they establish the value of the security as being equal to the outstanding indebtedness and the nonexistence of any impairment of the security. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 606.) Under this rule, when the plaintiff-seller-beneficiary of the property covered by a purchase money deed of trust purchases the property pursuant to a full credit bid at the nonjudicial foreclosure sale, there is total satisfaction of the secured obligation and no damages from the waste as a matter of law. (*Id.* at pp. 606-607; *Sumitomo Bank* v. *Taurus Developers, Inc.* (1986) 185 Cal.App.3d 211, 219-220 [229 Cal.Rptr. 719].) If, however, the beneficiary bids less than the full amount of the obligation and acquires the property valued at less than the full amount, the security has been impaired and damages for waste may be recovered in the amount not exceeding the difference between the amount of the bid and the full amount of the outstanding indebtedness immediately prior to the foreclosure sale. (*Cornelison* v. *Kornbluth, supra,* at p. 607; *Sumitomo Bank* v. *Taurus Developers, Inc., supra,* at p. 220.)

■ Plaintiffs argue that they did not make a full credit bid—that is, one equivalent to the entire outstanding indebtedness, because the bid was measured only by the amount secured by their senior deed of trust and did not include any portion of the debt secured by the junior lien. On the basis of the pleadings and other matters properly considered by the trial court, plaintiffs are correct.

The trustee's deed reflects that at the nonjudicial foreclosure sale plaintiffs paid, presumably by credit bid, $314,901.67, the exact amount of the unpaid debt secured by the senior deed of trust. From the allegations in the pleadings we infer that the second note for $300,000 was, at least in large part, unpaid. Thus, immediately prior to the foreclosure sale the total outstanding indebtedness was approximately $600,000, nearly twice the actual

distress, it incorporated all prior causes of action. At the very least it furnished grounds for allowing plaintiffs leave to amend to cure any deficiency in their bad faith waste allegations.

amount of plaintiffs' credit bid. Nevertheless, both in the lower court and on appeal defendants characterize plaintiffs' bid as a "full credit bid." That characterization necessarily assumes one of two possible premises—either that the only obligation owing was that secured by the senior trust deed or that the amount of the bid should somehow be deemed increased to include the amount owing on the junior encumbrance. We see no reason in law or logic for making either assumption.

*Cornelison* involved only a single note and deed of trust, so nothing in the Supreme Court's decision in that case compels that we treat the plaintiffs' bid here as being for the amount owing on both notes. Defendants argue that we should do so because of *Simon* v. *Superior Court, supra,* 4 Cal.App.4th 63, which, in effect, treats the two deeds of trust as merged when held by the same beneficiary. The argument lacks merit.

In *Simon* the plaintiff/beneficiary was directly suing on the underlying obligation secured by the junior lien. The case did not involve any claims for damages based on waste or other torts. Thus, while the *Simon* court properly held that nonjudicial foreclosure of the senior lien barred recovery of a deficiency on the junior obligation, it was not faced with the issue framed here. Once the court determined that the foreclosing beneficiary was not entitled to status as a sold-out junior, no further questions remained. The amount of the creditor's bid at the foreclosure sale was immaterial, because under section 580d a deficiency judgment is barred regardless of the amount bid.

Plaintiffs' claims do not rest on the premise they are sold-out juniors. They rest on an established line of case law authorizing recovery for tort damages to the extent the security interest has been impaired. Indulging the fiction that the two deeds of trust are one for purposes of the antideficiency statutes does not justify ignoring the full amount of the obligation or arbitrarily increasing plaintiffs' bid to bar the recovery of tort damages.

Defendants received full benefit of the *Simon* holding when we treated their two obligations as one, thus barring any deficiency judgment. Under the Supreme Court's express language in *Cornelison,* if there were a single obligation for $600,000 but nonjudicial foreclosure credit bid of only $314,901.67, defendants would be exposed to a potential judgment for bad faith waste to the extent of the difference. (15 Cal.3d at pp. 607-608.) Nothing in *Simon* suggests that a debtor who has given multiple secured obligations on the same property to the same creditor should enjoy a better legal position than a debtor of a single secured obligation.

The trial court erred in ruling that plaintiffs are precluded from seeking damages for waste.

*Fraud and Conversion*

 In some cases a beneficiary can maintain an action for damages based on fraud of the trustor/borrower which induced the beneficiary to make the loan. The fraud action is based on the trustor's tort and is not an action to collect a deficiency on a note. (4 Miller & Starr, Cal. Real Estate, *op. cit. supra,* § 9:157, pp. 533-535.) As in an action for waste, the antideficiency rule does not apply when the borrower has committed fraud resulting in an impairment of the security. (*Sumitomo Bank* v. *Taurus Developers, Inc., supra,* 185 Cal.App.3d at p. 218; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 139 [135 Cal.Rptr. 802].) Thus, plaintiffs' allegations of fraudulent conduct by defendants during the lender transaction state a cause of action not barred by the antideficiency rules, *if* their security interest has been impaired. (*Ibid.*)[8]

Plaintiffs also sought damages caused by the alleged conversion of rents by the defendants while they were in possession.

Both fraud and conversion claims are subject to the full credit bid rule set out in *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590. (See *Western Fed. Savings & Loan Assn.* v. *Sawyer* (1992) 10 Cal.App.4th 1615, 1622-1623 [13 Cal.Rptr.2d 639] [fraud]; *Sumitomo Bank* v. *Taurus Developers, Inc., supra,* 185 Cal.App.3d at pp. 218-220 [fraud]; *Eastland S. & L. Assn.* v. *Thornhill & Bruce, Inc.* (1968) 260 Cal.App.2d 259, 261-262 [66 Cal.Rptr. 901] [conversion].) Relying on that rule, the trial court concluded the plaintiffs' fraud and conversion causes were barred. As discussed above, however, the facts before us do not show plaintiffs made a *full* credit bid. Plaintiffs should be given an opportunity to prove the allegations that their security interest was impaired by the defendants' fraud or conversion.

*Liability of Trimble*

Plaintiffs also sought damages from Trimble for emotional distress and for the other alleged torts under an alter ego theory and by virtue of his personal guaranty. The trial court ruled these theories could not be pursued because the plaintiffs suffered no damage—that is, their security was not impaired. Because the ruling was based on the flawed premise that plaintiffs reacquired the property with a full credit bid establishing the property's value as equal to the secured indebtedness, it was erroneous.

---

[8]Various statutes provide for, and place limitations on, the right of certain institutional lenders and other persons authorized by the state to make or arrange for real estate loans to sue the borrower for fraud. (See § 726, subds. (f)-(h); Fin. Code, §§ 779, 7460, and 15102.) Nothing in these statutes affects the rights of private parties who take back real property security interests on the sale of their property. The record does not support any inference that plaintiffs are subject to the statutes.

*Liability of Attorney Rowe*

The trial court similarly concluded plaintiffs could not proceed on their negligence claim against Rowe because of the full credit bid rule. For the same reasons given above, we find that the court erred.

3. *The attorney fees awards cannot stand*

 Because the judgment on the pleadings was erroneously entered, it follows that defendants were not entitled to the awards of attorney fees ordered by the trial court. Defendants are not prevailing parties under Civil Code section 1717, and there was no basis for finding plaintiffs' complaint frivolous or filed in bad faith. (See § 128.5.)[9] The orders must fall with the judgment upon which they rest. Defendants' cross-appeal, contending the court abused its discretion by not awarding more fees, is moot.

### DISPOSITION

Judgment reversed. Plaintiffs shall recover their costs on appeal.

Ardaiz, P. J., and Bissig, J.,* concurred.

A petition for a rehearing was denied October 17, 1994, and the petition of defendants and appellants for review by the Supreme Court was denied December 15, 1994.

---

[9]The record does not reflect which statute the trial court relied upon in awarding fees. The award was made by minute order which did not comply with the requirements of section 128.5, subdivision (c).

*Judge of the Kings Superior Court sitting under assignment by the Chairperson of the Judicial Council.