[No. B210803. Second Dist., Div. Two. July 2, 2009.]

LESLIE LOCKHART, Plaintiff and Appellant, v.
MVM, INC., Defendant and Respondent.

**COUNSEL**

Mark Weidmann and Lee Franck for Plaintiff and Appellant.

Knee Ross & Silverman, Howard M. Knee and Jennifer L. Gentin for Defendant and Respondent.

## OPINION

**CHAVEZ, J.**—Leslie Lockhart (appellant) appeals from a judgment entered after the trial court granted the motion for summary judgment filed by MVM, Inc. (respondent), as to all four of appellant's causes of action against respondent. The trial court's ruling was based on its determination that appellant's state law claims were barred because they arose on a federal enclave. We affirm.

## CONTENTIONS

Appellant contends that the trial court erred in granting summary judgment because the evidence supported her position that the pertinent events occurred outside the federal enclave. Appellant also contends that the trial court erred in overruling her evidentiary objections to (1) a declaration offered in support of respondent's summary judgment motion; and (2) respondent's documentary evidence tending to show that appellant worked on a federal enclave.

## FACTUAL BACKGROUND

During the relevant time period, respondent was a federal contractor providing detention (unarmed guard) staffing for United States Immigration and Customs Enforcement (ICE) at the San Pedro ICE facility, a federal correctional facility at Terminal Island in San Pedro, California. The San Pedro ICE facility is located on federal land which was acquired by the United States government from the Los Angeles Harbor authorities in or about September 1927.

Appellant commenced employment with respondent as a custodial officer trainee on or about January 17, 2006. She began performing contract work on February 4, 2006. Appellant's last date of work was a little over a month later, on March 10, 2006. Her employment was terminated prior to the expiration of her 90-day probationary period.

The decision to terminate appellant was made by Jeffrey Poplin, her supervisor at the San Pedro ICE facility, in conjunction with Dina Evans, a human resources manager based at respondent's headquarters in Vienna, Virginia.[1] Lockhart received her termination letter, dated March 20, 2006, at her home in Long Beach, California.

---

[1] Respondent admits that MVM's headquarters in Vienna, Virginia, is not on a federal enclave.

## PROCEDURAL HISTORY

On February 21, 2007, appellant filed and served her complaint against respondent for (1) disability discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.); (2) disability discrimination in violation of public policy; (3) retaliation for requests for accommodation in violation of FEHA; and (4) retaliation for requests for accommodation in violation of public policy.[2] Appellant alleged that her disabilities included, but were not limited to, occipital neuralgia and depression. She further alleged that respondent knew of her protected status under FEHA, refused to accommodate these disabilities, and made decisions adverse to her which were motivated by her disabilities.

On March 13, 2008, respondent filed its motion for summary judgment. Respondent argued that the state law claims for disability discrimination and retaliation set forth in the complaint were barred by the federal enclave doctrine because appellant was employed by a federal contractor in a federal enclave. Appellant opposed the motion on the following grounds: (1) there was no admissible evidence that the facility is a federal enclave; (2) there was no admissible evidence that the pertinent events occurred on a federal enclave; and (3) appellant established a triable issue of fact that the pertinent events occurred away from any potential federal enclave.

The motion was heard on May 29, 2008. At the hearing, the trial court overruled appellant's evidentiary objections.[3] The court announced its intention to grant respondent's motion because "this is what the authorities would require." The court entered a minute order granting the motion on May 29, 2008. Final judgment was entered on July 16, 2008.

On September 12, 2008, appellant filed her notice of appeal.

## DISCUSSION

### I. *Standards of review*

The standard of review for an order granting a motion for summary judgment is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) The trial court's stated reasons for granting summary relief are not binding on the reviewing court,

---

[2] Appellant's two causes of action which cited violations of public policy were based on the public policies set forth in FEHA.

[3] The court also overruled respondent's evidentiary objections, with one exception: it sustained respondent's objection to paragraph 11 of appellant's declaration in support of her opposition to respondent's motion. Appellant does not appeal this evidentiary ruling.

which reviews the trial court's ruling, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878 [116 Cal.Rptr.2d 158].)

A party moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar, supra,* 25 Cal.4th at p. 850, fn. omitted.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.,* fn. omitted.) "A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Ibid.*)

Generally, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (*Aguilar, supra,* 25 Cal.4th at pp. 850–851, fns. omitted.)

The trial court's rulings on appellant's evidentiary objections are reviewed under an abuse of discretion standard. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 [23 Cal.Rptr.3d 915].) Under this standard, the trial court's decision will not be disturbed on appeal unless it exceeds the bounds of reason. (*Pioneer Take out Corp. v. Bhavsar* (1989) 209 Cal.App.3d 1353, 1357 [257 Cal.Rptr. 749].)

## II. *The federal enclave doctrine*

██ "A federal enclave is land over which the federal government exercises legislative jurisdiction. [Citation.] The federal power over such enclaves emanates from article I, section 8, clause 17 of the United States Constitution, which gives Congress the power '[t]o exercise exclusive legislation in all cases whatsoever' over the District of Columbia and 'to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards and other needful buildings.' " (*Taylor v. Lockheed Martin Corp.* (2000) 78 Cal.App.4th 472, 478 [92 Cal.Rptr.2d 873] (*Taylor*).)

"An enclave is created when the federal government purchases land within a state with the state's consent, which may be conditioned on the retention of state jurisdiction consistent with the federal use. [Citation.] Unlike those

situations where the United States has a mere proprietary interest in a piece of land, the voluntary cession of land by a state to the federal government is an actual transfer of sovereignty. [Citations.]" (*Taylor, supra*, 78 Cal.App.4th at p. 478.)

In support of its summary judgment motion, respondent filed a request for judicial notice. The request for judicial notice contained a copy of a grant deed, dated September 6, 1927, from the Los Angeles Harbor authorities to the United States of America. The deed conveyed the land to "have and to hold the same unto and to the use of the United States of America for public purposes forever," with the reservation of certain portions of the land to the City of Los Angeles for public highway and public ferry purposes. The land was accepted on behalf of the War Department of the United States of America. The deed specified that the transfer was authorized by the State of California, pursuant to an act passed at the Fortieth Session of the Legislature, which authorized municipalities "to grant portions of such lands in accordance with the terms of said act, to the United States for public purposes of the United States." (See Stats. 1913, ch. 250, § 1, p. 437.)

The request for judicial notice also contained various articles showing that the land had been used as a federal prison in the decades following the transfer, as well as documentation showing the current owner of the land to be the United States government.[4]

This documentation shows the required "voluntary cession of land by a state to the federal government," resulting in "an actual transfer of sovereignty. [Citations.]" (*Taylor, supra*, 78 Cal.App.4th at p. 478.) Appellant presents no conflicting evidence other than her own statements that she was "never aware" that she worked on a federal enclave and was under the impression that she "worked in a regular job without any special rules or regulations." Appellant's statements are insufficient to create a triable issue of fact as to whether the federal government has exclusive jurisdiction of the territory in question. (*Pepper Industries, Inc. v. Home Ins. Co.* (1977) 67 Cal.App.3d 1012, 1017 [134 Cal.Rptr. 904] [mere expression of opinion insufficient to raise triable issue of fact].) Respondent has established that the San Pedro ICE facility is under federal sovereignty and is subject to the federal enclave doctrine.

III.   *Applicable enclave law*

■   "When an area becomes a federal enclave, Congress assumes the power of legislation over that area. Federal law thus applies, although not

---

[4] In addition, respondent invited the court to review the official Web site for the ICE facility, which stated that the facility is on a "federal reserve." The referenced Web page is no longer available.

'every vestige of the laws of the former sovereignty must vanish.' [Citation.]" (*Taylor, supra*, 78 Cal.App.4th at p. 481.) "State law which is in effect at the time of the cession, and which is not inconsistent with federal law, will continue to apply within the enclave unless it is abrogated by Congress. [Citations.] State law which did not exist at the time of cession will also extend to the enclave when the state regulation has been expressly permitted by Congress. [Citation.]" (*Id.* at pp. 481–482.)

Appellant's claims are based on FEHA, a state statutory scheme which was not enacted until 1980. (*Taylor, supra*, 78 Cal.App.4th at p. 483; Stats. 1980, ch. 992, § 4, pp. 3410, 3148–3149.) The predecessor statutes of FEHA were contained in the Fair Employment Practices Act, which was not enacted until 1959. (*Taylor*, at p. 483.) Appellant does not assert that any congressional action since 1927 has authorized state FEHA claims against employers operating on federal enclaves within California.[5]

Because respondent has established that appellant worked on a federal enclave, and because the federal enclave doctrine bars appellant's state law claims, respondent has established a complete defense to appellant's causes of action. The burden switches to appellant to create a triable issue of fact.

IV. *Appellant's claims were properly dismissed under the federal enclave doctrine*

Appellant's main argument against application of the federal enclave doctrine is that the pertinent events of appellant's termination did not occur on the federal enclave. Appellant argues that her evidence shows that the termination was decided and implemented at respondent's headquarters in Virginia—a site admittedly not on a federal enclave—and that she was informed of her termination at her home—also, not on a federal enclave. Appellant points to case law holding that, in order for the federal enclave doctrine to apply, the claim must "arise" on the enclave. (*Taylor, supra*, 78 Cal.App.4th at pp. 480–481.)[6]

*Taylor* does not support appellant's position. The case involved a former employee of Lockheed Martin Corporation, a civilian contractor providing

---

[5] The federal enclave doctrine does not leave appellant without a remedy for her disability discrimination claims. Federal antidiscrimination law is applicable to claims arising on federal enclaves. (*Taylor, supra*, 78 Cal.App.4th at p. 472.)

[6] Both parties also cite to federal district court opinions regarding the federal enclave doctrine. (See *Snow v. Bechtel Constr., Inc.* (C.D.Cal. 1986) 647 F.Supp. 1514, 1521 (*Snow*); *Osburn v. Morrison Knudsen Corp.* (E.D.Mo. 1997) 962 F.Supp. 1206, 1209 (*Osburn*).) We are not bound by these cases, but look to them as persuasive authority. (*Etcheverry v. Tri-Ag Service, Inc.* (2000) 22 Cal.4th 316, 320–321 [93 Cal.Rptr.2d 36, 993 P.2d 366].)

launch operations services at Vandenberg Air Force Base. The former employee, Taylor, sued Lockheed for violations of the Labor Code, FEHA, and the California Constitution. (*Taylor, supra,* 78 Cal.App.4th at p. 477.) Lockheed moved for summary judgment on the ground that Vandenberg was a federal enclave under the exclusive legislative jurisdiction of the federal government, thus Taylor's state law claims were not cognizable. (*Ibid.*) Taylor argued that his claims did not arise on the Vandenberg enclave because he had been placed on paid suspension and was not working on the base at the time he was terminated. (*Id.* at p. 481.) The Court of Appeal disagreed, stating: "The fortuity of a paid suspension before his termination does not mean that he ever worked for Lockheed outside the enclave or that his employment claims arose elsewhere." (*Ibid.*) The court concluded, "As the employee of a contractor operating on the enclave, Taylor's claims are governed by the enclave's law, rather than by state law." (*Ibid.*) The same reasoning applies to appellant. Although she was at home at the time she received her termination letter—and although that letter may have originated at respondent's corporate headquarters in Virginia—appellant was the employee of a federal contractor operating on a federal enclave. Thus, her employment claims are governed by the enclave's law.

Appellant argues that, under *Taylor,* this court should focus on where the termination decision was made. Appellant takes the position that the decision to terminate appellant was made exclusively at her employer's corporate headquarters in Virginia. Preliminarily, we note that the evidence does not support appellant's position. Respondent presented evidence that the decision to terminate appellant was made by both Jeffrey Poplin, appellant's direct supervisor who worked on the enclave, and Dina Evans, the human resources manager who was located in Virginia. In addition, the decision in *Powell v. Tessada & Assocs.* (N.D.Cal., Mar. 10, 2005, Civ. No. C04-05254JF) 2005 U.S.Dist. Lexis 46922, provides persuasive authority that, even if the termination decision was made exclusively in Virginia, appellant's argument cannot prevail. In *Powell,* the plaintiffs were previously employed by a contractor providing janitorial services at the NASA Ames Research Center at Moffett Federal Airfield. When they were not rehired, they filed an employment discrimination action. In an effort to avoid application of the federal enclave doctrine, the plaintiffs argued that the adverse decision was made at the defendant's corporate headquarters in Virginia, not on the federal enclave. In rejecting this argument, the district court noted that the plaintiffs' argument was inconsistent with *Taylor,* and concluded that "regardless of where the decision not to retain Plaintiffs was made, the decision reflects Defendants' employment practice on the enclave. As a result, Plaintiffs cannot maintain their state law claims." (*Powell, supra,* at p. *7.)

*Taylor* and the federal authorities cited by appellant emphasize the plaintiff's place of employment as the significant factor in determining where the

plaintiff's employment claims arose under the federal enclave doctrine. (*Taylor, supra,* 78 Cal.App.4th at p. 481 ["As the employee of a contractor operating on the enclave, Taylor's claims are governed by the enclave's law."]; *Snow, supra,* 647 F.Supp. at p. 1521 [plaintiff's wrongful termination claim barred because "all pertinent events occurred on a federal enclave"]; *Osburn, supra,* 962 F.Supp. at p. 1209 [granting summary judgment on plaintiff's age discrimination cause of action because any such action "arising under the [Missouri Human Rights Act] occurred as a result of defendant's employment practices on the federal enclave"]; *Miller v. Wackenhut Services, Inc.* (W.D.Mo. 1992) 808 F.Supp. 697, 700 [dismissing plaintiff's state law employment discrimination claim based on the federal enclave doctrine]; *Stiefel v. Bechtel Corp.* (S.D.Cal. 2007) 497 F.Supp.2d 1138, 1147–1148 [rejecting plaintiff's argument that the federal enclave doctrine should not apply to his state law wrongful termination claims because plaintiff was working for "a subcontractor . . . working on various projects at [the federal enclave]" and thus "all the pertinent allegations in Plaintiff's FAC regarding Plaintiff's claims for wrongful termination . . . are subject to the federal enclave doctrine"].)

■ Appellant was, at all relevant times, employed by a federal contractor working on a federal enclave. She has failed to raise a triable issue of fact as to whether her employment claims arose outside of the federal enclave.

## V. *The trial court did not abuse its discretion in overruling appellant's evidentiary objections*

Appellant's evidentiary objections were directed towards respondent's evidence tending to show that the ICE facility was located on a federal enclave. Appellant first takes issue with the declaration of Dina Evans, wherein she states on information and belief that "the San Pedro ICE is located within a federal enclave." Appellant cites *Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1124 [63 Cal.Rptr.2d 359] for the proposition that evidence on information and belief does not satisfy the burden of proof for a moving party.

Appellant also takes issue with respondent's documentary evidence, which came in the form of newspaper articles and a grant deed. Appellant argues that none of these documents describes the land in question as a federal enclave, that the documents are inadmissible hearsay, and that they have not been authenticated.

The grant deed is judicially noticeable under Evidence Code section 452, subdivisions (c) and (g). (See *Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 549 [33 Cal.Rptr.2d 646] [court may take judicial notice of

deed under Evid. Code, § 452, subd. (g)]; *Cal-American Income Property Fund II v. County of Los Angeles* (1989) 208 Cal.App.3d 109, 112, fn. 2 [256 Cal.Rptr. 21] [court may take judicial notice of recordation of deed under Evid. Code, § 452, subd. (c)].) Its existence and authenticity cannot reasonably be subject to dispute, and appellant makes no argument to the contrary. The document establishes the boundary of federal land, which includes the San Pedro ICE facility.

Because the grant deed was judicially noticeable, and establishes the boundaries of the federal enclave in question, we decline to address appellant's remaining arguments as to the trial court's evidentiary rulings. Even if these rulings were erroneous, they were not prejudicial. Therefore we may disregard them. (Cal. Const., art. VI, § 13 [no judgment shall be set aside on the ground of evidentiary error unless error resulted in miscarriage of justice]; Code Civ. Proc., § 475 [reviewing court disregards nonprejudicial error and presumes that trial court error is nonprejudicial].)

## DISPOSITION

The judgment is affirmed.

Boren, P. J., and Ashmann-Gerst, J., concurred.