# IN THE SUPREME COURT OF CALIFORNIA

BLACK SKY CAPITAL, LLC,
Plaintiff and Appellant,

v.

MICHAEL A. COBB et al.
Defendants and Respondents.

S243294

Fourth Appellate District, Division Two
E064482

San Bernardino County Superior Court
CIVDS1416584

May 6, 2019

Justice Liu authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Cuéllar, Kruger, and Groban concurred.

BLACK SKY CAPITAL, LLC v. COBB

S243294


Opinion of the Court by Liu, J.


Under California law, a creditor can recover a debt secured by a deed of trust on real property through a nonjudicial foreclosure action to sell the property at a public auction. Code of Civil Procedure section 580d provides that a creditor cannot collect a deficiency judgment — that is, the difference between the amount of indebtedness and the fair market value of the property — if the property is sold for less than the amount of the outstanding debt. (All undesignated statutory citations are to the Code of Civil Procedure.) Here we consider this question: Where a creditor holds two deeds of trust on the same property, can the creditor recover a deficiency judgment on a junior lien extinguished by a nonjudicial foreclosure on the senior lien? The trial court applied section 580d to bar such a recovery; the Court of Appeal disagreed. We affirm and hold that under the circumstances here, section 580d does not preclude a creditor holding two deeds of trust on the same property from recovering a deficiency judgment on the junior lien extinguished by a nonjudicial foreclosure sale on the senior.

## I.

On August 18, 2005, defendants Michael and Kathleen Cobb borrowed $10,299,250 from Citizens Business Bank by executing a promissory note secured by a deed of trust, also dated August 18, 2005, on a parcel of commercial property in Rancho Cucamonga. On September 13, 2007, the Cobbs

1

borrowed an additional $1.5 million from Citizens Business Bank by executing a second promissory note secured by a separate deed of trust, dated September 7, 2007, on the same property. The second deed of trust said the lien "may be secondary and inferior to the lien securing payment of an existing obligation . . . to Citizens Business Bank described as: First Deed of Trust dated August 18, 2005." On January 3, 2014, Citizens Business Bank sold both loans to plaintiff Black Sky Capital, LLC (Black Sky). On June 20, 2014, Black Sky sent the Cobbs a notice of default and election to sell the property under the first deed of trust. Black Sky acquired the property at a public auction for $7.5 million on October 28, 2014. On November 4, 2014, Black Sky filed a lawsuit to recover the amount still owed on the second deed of trust extinguished by the foreclosure sale. Both parties moved for summary judgment.

Applying *Simon v. Superior Court* (1992) 4 Cal.App.4th 63, 66 (*Simon*), which held that section 580d precludes a deficiency judgment for a junior lienholder who was also the foreclosing senior lienholder, the trial court concluded that section 580d bars the monetary judgment sought by Black Sky and granted the Cobbs' motion for summary judgment. On appeal, the Court of Appeal declined to follow *Simon* in light of our decision in *Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 43 (*Roseleaf*), which held that section 580d does not preclude a deficiency judgment for a nonselling junior lienholder. (*Black Sky Capital, LLC v. Cobb* (2017) 12 Cal.App.5th 887, 897 (*Black Sky*).) The Court of Appeal observed that although the senior and junior lienholder are the same, "[a]ny debt owed on the junior note in this case has no relationship to the debt owed on the senior note, and by no contortion of the . . . definition [of a

deficiency judgment] can the unpaid balance on that note be deemed a deficiency with respect to the senior note, within the meaning of section 580d." (*Black Sky*, at p. 897.) Rather, "[t]he unambiguous language in section 580d . . . indicate[s] that section 580d applies to a single deed of trust" and "does not apply to preclude Black Sky from suing for the balance due on the junior note in this case." (*Ibid.*) The Court of Appeal reversed the trial court's judgment and remanded for further proceedings. (*Ibid.*) We granted review.

## II.

"California has an elaborate and interrelated set of foreclosure and antideficiency statutes relating to the enforcement of obligations secured by interests in real property. Most of these statutes were enacted as the result of 'the Great Depression and the corresponding legislative abhorrence of the all too common foreclosures and forfeitures [which occurred] during that era for reasons beyond the control of the debtors.' " (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236.) Under section 726, "there is only 'one form of action' for the recovery of any debt or the enforcement of any right secured by a mortgage or deed of trust"; "[t]hat action is foreclosure, which may be either judicial or nonjudicial." (*Alliance Mortgage*, at p. 1236.) In a judicial foreclosure, a creditor may seek a deficiency judgment to recover "the difference between the amount of the indebtedness and the fair market value of the property" if the property is sold for less than the amount of the outstanding debt. (*Ibid.*) But the debtor has a statutory right of redemption, which provides "an opportunity to regain ownership of the property by paying the foreclosure sale price, for a period of time after foreclosure." (*Ibid.*) In a nonjudicial foreclosure, also known as a trustee's sale, the creditor exercises

the power of sale given by the deed of trust, and the debtor has no statutory right to redemption. (*Ibid.*) But under section 580d, "the creditor may not seek a deficiency judgment" after a nonjudicial foreclosure. (*Alliance Mortgage*, at p. 1236.)

In *Roseleaf*, we considered whether this provision bars recovery on a junior lien in a circumstance where that lien was held by a creditor different from the one holding a senior lien on the same property. The senior lienholder in *Roseleaf* initiated a nonjudicial foreclosure sale without any involvement of the junior lienholder. After the sale, the junior lienholder sued the debtor to recover the full amount unpaid on the second deed. (*Roseleaf, supra*, 59 Cal.2d at p. 38.) We observed that the antideficiency statutes' fair value provisions "are designed to prevent creditors from buying in at their own sales at deflated prices and realizing double recoveries by holding debtors for large deficiencies." (*Id.* at p. 40.) We also observed that under these provisions, and even in their absence, "[s]ome courts have limited deficiency judgments to prevent double recoveries," but "they have not limited such judgments when sought by nonselling junior lienors." (*Ibid.*) The reason is that "[t]he position of a junior lienor whose security is lost through a senior sale is different from that of a selling senior lienor. A selling senior can make certain that the security brings an amount equal to his claim against the debtor or the fair market value, whichever is less, simply by bidding in for that amount. He need not invest any additional funds. The junior lienor, however, is in no better position to protect himself than is the debtor. Either would have to invest additional funds to redeem or buy in at the sale. Equitable considerations favor placing this burden on the debtor, not only because it is his default that provokes the senior sale, but also because he has the benefit of his bargain with the

junior lienor who, unlike the selling senior, might otherwise end up with nothing." (*Id.* at p. 41.)

Section 580d, we held, "does not bar [the junior lienholder's] action." (*Roseleaf, supra*, 59 Cal.2d at p. 43.) At the time, the text of the statute prohibited a deficiency judgment " 'upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust.' " (*Ibid.*) " '[S]uch mortgage or deed of trust,' " we said, "refers to the instrument securing the note sued upon. Thus section 580d does not appear to extend to a junior lienor whose security has been sold out in a senior sale." (*Ibid.*)

We went on to explain that section 580d "was enacted to put judicial enforcement on a parity with private enforcement." (*Roseleaf, supra*, 59 Cal.2d at p. 43.) Before the enactment of section 580d, a debtor had a statutory right to redemption under a judicial foreclosure but not under a trustee's sale. "The right to redeem, like proscription of a deficiency judgment, has the effect of making the security satisfy a realistic share of the debt. [Citation.] By choosing instead to bar a deficiency judgment after private sale, the Legislature achieved its purpose without denying the creditor his election of remedies. If the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable title, he must forego the right to a deficiency judgment. In either case the debtor is protected." (*Roseleaf*, at pp. 43–44.)

We further explained: "The purpose of achieving a parity of remedies would not be served by applying section 580d

against a nonselling junior lienor. Even without the section the junior has fewer rights after a senior private sale than after a senior judicial sale. He may redeem from a senior judicial sale (Code Civ. Proc., § 701), or he may obtain a deficiency judgment. [Citations.] After a senior private sale, the junior has no right to redeem. This disparity of rights would be aggravated were he also denied a right to a deficiency judgment by section 580d. There is no purpose in denying the junior his single remedy after a senior private sale while leaving him with two alternative remedies after a senior judicial sale. The junior's right to recover should not be controlled by the whim of the senior, and there is no reason to extend the language of section 580d to reach that result." (*Roseleaf*, *supra*, 59 Cal.2d at p. 44; see *Bargioni v. Hill* (1963) 59 Cal.2d 121, 122 [citing *Roseleaf*'s holding that section 580d "bars recovery only on a note secured by a trust deed or mortgage that has been rendered valueless by a sale under a power of sale *contained in the trust deed or mortgage securing the note sued upon*" (italics added)].)

Does our construction of section 580d in *Roseleaf* limit the application of section 580d where, as here, the senior and junior lienholders are the same entity? For two decades, the leading decision on this issue was *Simon*, *supra*, 4 Cal.App.4th 63. The court there held that "where a creditor makes two successive loans secured by separate deeds of trust on the same real property and forecloses under its senior deed of trust's power of sale, thereby eliminating the security for its junior deed of trust, section 580d . . . bars recovery of any 'deficiency' balance due on the obligation the junior deed of trust secured." (*Id.* at p. 66.) The court explained that allowing a senior lienholder to pursue a trustee's sale, terminate the right of redemption, and obtain a deficiency judgment on a junior lien whose security the senior

6

lienholder made the choice to eliminate would not further the parity of remedies described in *Roseleaf*. (*Simon*, at p. 77.) Further, "[u]nlike [a situation involving] a true third party sold-out junior, [the] right to recover as a junior lienor which is also the purchasing senior lienor is obviously not controlled by the 'whim of the senior.' We will not sanction the creation of multiple trust deeds on the same property, securing loans represented by successive promissory notes from the same debtor, as a means of circumventing the provisions of section 580d." (*Ibid.*) Finally, *Simon* noted that "[t]he antideficiency statutes are to be 'liberally construed to effectuate the specific legislative purpose behind them. . . . The courts have exhibited a very hospitable attitude toward the legislative policy underlying the anti-deficiency legislation and have given it a broad and liberal construction that often goes beyond the narrow bounds of the statutory language.' " (*Id.* at p. 78.)

Over the next 20 years, several Courts of Appeal cited *Simon*'s reasoning with approval. (See *Bank of America, N.A. v. Mitchell* (2012) 204 Cal.App.4th 1199, 1207; *Ostayan v. Serrano Reconveyance Co.* (2000) 77 Cal.App.4th 1411, 1422; *Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 552.) However, the Court of Appeal in *Cadlerock Joint Venture, L.P. v. Lobel* (2012) 206 Cal.App.4th 1531 (*Cadlerock*) questioned this line of cases, observing that "[c]onspicuously absent from *Simon* . . . is a close examination of the text of section 580d." (*Cadlerock*, at p. 1548.) According to *Cadlerock*, "*Simon* . . . and its progeny . . . created an equitable exception to the text of section 580d" by misreading *Roseleaf*'s equitable considerations into section 580d. (*Cadlerock*, at p. 1549.) The court observed that although "[p]erhaps *Simon* and its progeny have come to the right result under the one form of action rule, assuming that

it is a proper sanction for a violation of section 726 under these circumstances to bar the junior lienor from obtaining *any* recovery," the one form of action rule should not be "conflated [with] the analysis of section 580d." (*Cadlerock*, at p. 1549.) But unlike *Simon*, *Cadlerock* involved a creditor that issued two deeds of trust on the same real property and then assigned the junior lien to a different creditor before foreclosing on the senior lien. *Cadlerock*'s criticism of *Simon* was therefore dicta, and the court acknowledged that *Simon* and its progeny were distinguishable because "the junior lienor and senior lienor [in *Cadlerock*] were different entities at the time of the senior trustee's sale." (*Cadlerock*, at p. 1546.)

The Court of Appeal here found *Cadlerock*'s criticism of *Simon* persuasive and concluded that *Roseleaf* "cannot be read to support the rule created by *Simon*." (*Black Sky*, *supra*, 12 Cal.App.5th at p. 894.) "*Roseleaf*'s holding that section 580d does *not* apply to nonselling junior lienholders cannot be contorted into a rule that section 580d somehow *does* apply to preclude a lienholder from seeking damages under the junior note if it, in its capacity as the senior lienholder, has exercised its right to conduct a private sale of the property rather than seeking a judicial foreclosure." (*Ibid*.) "Section 580d simply does not . . . , by its express terms, encompass a lien that has not been foreclosed," and to the extent that *Simon* could be justified as preventing a bank from "issuing nearly simultaneous loans secured by the same property . . . to circumvent the antideficiency statutes," that justification fails in this case where "the second loan was issued two years after the first, and the default did not occur until seven years later." (*Id.* at p. 895.) The Court of Appeal concluded that "Black Sky's suit to enforce

the debt on the junior note is not barred by section 580d or by section 726." (*Id.* at p. 897)

The question here is whether section 580d bars a deficiency judgment on a junior lien held by a senior lienholder that sold the property comprising the security for both liens. We do not consider whether section 726 or any other statute bars or limits such a deficiency judgment; the question before us concerns only section 580d.

## III.

Section 580d, subdivision (a) provides that "no deficiency shall be owed or collected, and no deficiency judgment shall be rendered for a deficiency on a note secured by a deed of trust or mortgage on real property or an estate for years therein executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust." Black Sky contends that section 580d does not apply because it is seeking a deficiency on the note secured by the September 7, 2007 deed of trust and no sale occurred under power of sale contained in that deed of trust.

The plain language of section 580d, subdivision (a) bars a deficiency judgment on a note secured by a deed of trust on real property when the trustee has sold the property "under power of sale contained in *the* . . . deed of trust." (Italics added.) The definite article in the phrase "the . . . deed of trust" makes clear that the statute applies where sale of the property has occurred under *the deed of trust securing the note sued upon*, and not under some other deed of trust. (*Ibid.*) We reached the same conclusion in *Roseleaf* at a time when section 580d used the phrase "such . . . deed of trust" instead of "the . . . deed of trust":

The phrase "refers to the instrument securing the note sued upon." (*Roseleaf, supra*, 59 Cal.2d at p. 43.) *Roseleaf* was not a case in which the senior and junior lienholders were the same entity. But nothing in the text of section 580d indicates that the statute applies where no sale has occurred under the trust deed securing a junior lien, even if the lien is held by a creditor who has foreclosed on a senior lien on the same property.

We have "consistently looked to the purposes of the statute and to the substance rather than the form of loan transactions in deciding the . . . applicability" of antideficiency statutes. (*Coker v. JPMorgan Chase Bank, N.A.* (2016) 62 Cal.4th 667, 676; *id.* at pp. 676–681 [discussing our case law applying this approach].) The Cobbs contend that allowing a junior lienholder to collect a deficiency judgment in this scenario would be at odds with the purpose of section 580d insofar as a creditor could structure what is functionally a single loan as two separate notes in order to recover under the junior note what it could not recover if it had issued a single note on the same property. In *Simon*, the junior and senior loans were issued just four days apart, and the deeds of trust securing the loans were recorded on the same date. (*Simon, supra*, 4 Cal.App.4th at p. 66.) *Simon* treated the two loans as one, distinguishing the lender from "a true third party sold-out junior." (*Id.* at p. 77.) It was in that context that *Simon* said courts "will not sanction the creation of multiple trust deeds on the same property, securing loans represented by successive promissory notes from the same debtor, as a means of circumventing the provisions of section 580d." (*Ibid.*)

Where there is evidence of gamesmanship by the holder of senior and junior liens on the same property, a substantial question would arise whether the two liens held by the same

creditor should — in substance, if not in form — be treated as a single lien within the meaning of section 580d. (Cf. *Freedland v. Greco* (1955) 45 Cal.2d 462, 467 ["It is unreasonable to say the Legislature intended that section 580d could be circumvented by such a manifestly evasive device [where the creditor issued two notes, one secured by a deed of trust and another by a chattel mortgage, for the same obligation of $7,000]. In such a situation the legislative intent must have been that the two notes are, in legal contemplation and under section 580d, one, secured by a trust deed."]; *Simon*, *supra*, 4 Cal.App.4th at p. 66.) It is unclear that the Legislature, in enacting section 580d, intended to permit such gamesmanship to affect the amount of recovery under a junior lien.

But we have no occasion here to decide the applicability of section 580d in these or other gamesmanship scenarios. The Cobbs do not allege, and there is no evidence to suggest, that the two notes in this case arose from intentional loan splitting; they were executed in separate transactions more than two years apart. And the bare assertion by the Cobbs that Black Sky's purchase of the property for $7.5 million at a public auction in October 2014 was "substantially less than the appraised value of the Subject Property as of August 1, 2013" — with no evidence of irregularity at the public auction or price stability between the appraisal and auction — is not enough to suggest that $7.5 million was a lowball bid designed to "effect an excessive recovery by obtaining a deficiency judgment" on the junior lien. (*Simon*, *supra*, 4 Cal.App.4th at p. 78.) Indeed, counsel for the Cobbs acknowledged at oral argument that the Cobbs have "never taken the position" that "anything untoward" occurred in the origination of the loans or the public auction.

To be sure, when a single creditor holds senior and junior liens on the same property, the right to recover on the junior lien "is obviously not controlled by the 'whim of the senior.' " (*Simon, supra,* 4 Cal.App.4th at p. 77, quoting *Roseleaf, supra,* 59 Cal.2d at p. 44.) But it does not follow that section 580d's purpose of achieving parity of remedies between judicial and nonjudicial foreclosures would be served by interpreting the statute to categorically bar a deficiency judgment on the junior lien. Where, as here, there is no allegation of evasive loan splitting or recovery in excess of what any junior lienholder would be able to recover, we see no reason to depart from a straightforward reading of section 580d. Because no sale occurred under the deed of trust securing the junior note in this case, section 580d does not bar a deficiency judgment on the junior note. We disapprove *Bank of America, N.A. v. Mitchell* (2012) 204 Cal.App.4th 1199; *Ostayan v. Serrano Reconveyance Co.* (2000) 77 Cal.App.4th 1411; *Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540; and *Simon v. Superior Court* (1992) 4 Cal.App.4th 63, to the extent they are inconsistent with this opinion.

## CONCLUSION

We affirm the judgment of the Court of Appeal.

**LIU, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Black Sky Capital, LLC v. Cobb
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 12 Cal.App.5th 887
**Rehearing Granted**

_____

**Opinion No.** S243294
**Date Filed:** May 6, 2019
_____

**Court:** Superior
**County:** San Bernardino
**Judge:** Bryan Foster

_____

**Counsel:**

Law Offices of Ronald Richards & Associates, Ronald N. Richards; Wilson, Elser, Moskowitz, Edelman & Dicker, Robert Cooper; Law Offices of Geoffrey Long and Geoffrey S. Long for Plaintiff and Appellant.

Horvitz & Levy, Jeremy B. Rosen and Eric S. Boorstin for D-Day Capital, LLC, as Amicus Curiae on behalf of Plaintiff and Appellant.

Levitt Law, Scott L. Levitt; Lex Opus, Schiffer & Buus, Eric M. Schiffer and William L. Buus for Defendants and Respondents.

Arthur D. Levy and Noah Zinner for Housing and Economic Rights Advocates as Amicus Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Ronald N. Richards
Law Offices of Ronald Richards & Associates
P.O. Box 11480
Beverly Hills, CA  90213
(310) 556-1001

Eric M. Schiffer
Schiffer & Buus
959 South Coast Drive, Suite 385
Costa Mesa, CA  92626
(949) 825-6140