Filed 6/25/14  Jiagbogu v. Bank of America CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AZUBUEZE JIAGBOGU, | |
| Plaintiff and Appellant, | G048858 |
| v. | (Super. Ct. No. 30-2011-00453635) |
| BANK OF AMERICA, N.A., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Luis A. Rodriguez, Judge.  Affirmed.

Fransen and Molinaro and Nathan W. Fransen for Plaintiff and Appellant.

Severson & Werson, Navdeep K. Singh, Jan T. Chilton, and Kerry W. Franich  for Defendant and Respondent.

\*  \*  \*

Plaintiff Azubueze Jiagbogu appeals from a judgment entered in favor of defendant Bank of America after the trial court granted its motion for summary judgment. The court held no triable issue of fact existed as to (1) defendant's statute of limitations defense on the causes of action for fraud, negligent misrepresentation, and violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200; UCL); and (2) the absence of evidence to support a finding of justifiable reliance on the first two counts. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 2003, plaintiff purchased a residence in Mission Viejo with a $990,000 loan from Long Beach Mortgage Company, secured by a deed of trust on the property. The loan provided for an initial fixed rate of interest that would change to an adjustable rate after two years. The next year, plaintiff refinanced the home, obtaining an adjustable rate loan for over $1.3 million from Washington Mutual Bank. Several months later, he borrowed an additional $364,000 from Countrywide Home Loans, Inc. (Countrywide), secured by a second deed of trust on the property. Countrywide was later acquired by defendant.

Plaintiff claimed he once again went to a Countrywide office in 2005, seeking to refinance the loans secured by his home. He met with Tim Doherty, the branch manager, and John Omen, an employee. Plaintiff claimed Doherty and Omen urged him to refinance the property with an option adjustable rate mortgage (option-ARM) loan. They said it could reduce his monthly payments and save him money in interest payments over the life of the loan. Omen represented the monthly payments on a fixed interest rate loan would amount to $11,000, whereas an option-ARM loan's payments would range between $5,800 and $8,000.

Plaintiff initially was unconvinced, but eventually agreed to refinance the property with a $1.984 million option-ARM loan. The trust deed securing this loan incorporated an adjustable rate rider that plaintiff separately signed. The rider stated the promissory note "contains provisions that will change the interest rate and the monthly payment," "[t]he principal amount to repay could" increase to 115% of the "amount . . . originally borrowed," and if the principal reached that limit, plaintiff's monthly payments would increase to "an amount . . . sufficient to repay [the] . . . unpaid [p]rincipal in full on the Maturity Date in substantially equal payments at the current Interest rate." (Some capitalization and bold omitted.)

In early 2006, plaintiff obtained two more loans, one for $100,000 and a second for $125,000. Each loan was secured by a subordinate trust deed on his property. The loans were again obtained through Countrywide, but plaintiff does not assert Doherty or Omen assisted him in these transactions.

Later that year, plaintiff claimed he received a telephone call from Doherty informing him a $101,000 balloon payment was "due on my mortgage." According to plaintiff, Doherty and Omen proposed he refinance the current loans secured by the property, then totaling over $2.13 million, with a $2.15 million cash out loan they represented was fully amortized and carried a fixed interest rate with monthly payments of approximately $7,600 for the life of the obligation. Plaintiff agreed to this proposal.

The documentation submitted by defendant in support of its summary judgment motion paints a different picture. First, it presented a loan application plaintiff acknowledged he signed that stated he was seeking an adjustable rate loan. Second, the promissory note, dated July 11, 2006, and bearing plaintiff's signature is entitled "Adjustable Rate Note" (bold and some capitalization omitted). Directly below the caption, in all capital letters and bold print, appears the statement: "This note contains provisions that will change the interest rate and the monthly payment," and "the principal amount to repay could be greater than the amount originally borrowed." (Capitalization

3

and bold omitted.)  The same paragraph appears in an adjustable rate rider incorporated into the trust deed securing the loan which also bears plaintiff's signature.  Finally, although he denied receiving it, defendant submitted a truth in lending statement bearing plaintiff's signature, declaring "[t]his loan has a Variable Rate Feature" and disclosures about the rate "have been provided to you . . . ."

Plaintiff's declaration opposing the summary judgment motion denied that he saw any of these documents until 2009.  But he did not deny signing them or assert the signatures appearing on the documents were forged, and his response to defendant's separate statement of facts merely states each "document speaks for itself."

In October 2008, plaintiff received a statement declaring his monthly payment would increase to over $22,000.  He claims this was when he learned the loan was a pay-option ARM with negative amortization.  According to plaintiff, he spoke with Doherty who again offered to refinance the loan and also suggested he seek a loan modification from defendant.

Plaintiff initially filed suit against defendant and Countrywide in federal court on August 5, 2010.  His verified federal complaint acknowledged he obtained an option-ARM loan from defendant.  Defendant moved to dismiss the federal complaint and on November 10, the district court granted dismissal with leave to amend.

Instead of amending his federal complaint, on February 28, 2011, plaintiff filed this action against defendant alone.  The complaint alleged causes of action for fraud, negligent misrepresentation, negligence, and violation of the UCL.  The trial court sustained a demurrer to the negligence count without leave to amend.  Defendant moved for summary judgment on the remaining three counts.  The trial court granted the motion and entered judgment in defendant's favor.

4

DISCUSSION

*1. Standard of Review*

"Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (Code Civ. Proc., § 437c, subd. (a).) The court shall grant the motion "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) For a defendant to succeed on a motion for summary judgment, it must establish "that a cause of action has no merit" by showing "one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).)

The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law," plus "an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) If the moving party carries its production burden, "the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid*.) When opposing a defendant's summary judgment motion, "[t]he plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)

On appeal, we review an order granting a summary judgment motion de novo. (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144.) "In performing our de novo review, we must view the

5

evidence in a light favorable to plaintiff as the losing party [citation], liberally construing h[is] evidentiary submission while strictly scrutinizing defendant[']s own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

2. *The Fraud and Negligent Misrepresentation Causes of Action*

      a. *Statute of Limitations*

Plaintiff's complaint sought damages for fraud and negligent misrepresentation based on allegations that in July 2006 both Doherty and Omen induced him to accept the $2.15 million cash out refinance loan by falsely representing the loan was fully amortized and carried a fixed rate of interest with monthly payments of approximately $7,600 for the entire loan term. The statute of limitations for a cause of action alleging either fraud or negligent misrepresentation is three years. (Code Civ. Proc., § 338, subd. (d); *Broberg v. The Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912, 920.) Plaintiff did not file this action until February 2011, over four and one-half years after he accepted the loan.

But Code of Civil Procedure section 338 also provides "[t]he cause of action . . . is not deemed to have accrued until discovery, by the aggrieved party, of the facts constituting the fraud . . . ." (Code Civ. Proc., § 338, subd. (d).) Plaintiff alleges he relied on the representations by Doherty and Omen concerning the nature of the cash out loan and did not learn the truth until he received the October 2008 statement demanding he pay $22,000 a month on the loan. In response, defendant argues plaintiff's complaint failed to adequately allege facts supporting delayed accrual and his actual knowledge of the fraud is irrelevant; instead, the question is when plaintiff should have reasonably discovered the falsity of the alleged misrepresentations.

We agree with defendant's analysis. While the statute of limitations is subject to delayed accrual, "The courts interpret discovery in this context to mean not

6

when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing." (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1374.) "'Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, *or has the opportunity to obtain knowledge from sources open to [him,] . . . the statute commences to run*.'" (*Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1525, italics added.)

In addition, "the discovery rule operates as an exception to the statute of limitations, [and] 'if an action is brought more than three years after commission of the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint.' [Citation.] To excuse failure to discover the fraud within three years after its commission, a plaintiff also must plead 'facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.' . . . The discovery-related facts should be pleaded in detail to allow the court to determine whether the fraud should have been discovered sooner." (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1472.)

Plaintiff's complaint does allege he first discovered "that he had a negatively amortizing pay-option loan" when he contacted defendant in October 2008 after receiving notice his monthly payment had increased to over $22,000. But although plaintiff alleges (1) Doherty and Omen represented the loan had a fixed interest rate with monthly payments of about $7,600, (2) "the . . . [l]oan funded" without him being "provided with copies of loan documents," and (3) his mortgage statements initially "demanded monthly payments of approximately $7,600[]," he offers no evidence why he could not have discovered the loan's true nature when he signed the loan documents.

Even if the complaint is construed as sufficiently alleging delayed accrual, plaintiff failed to present sufficient evidence to demonstrate a triable issue of fact existed

7

concerning that allegation. As noted, while he claimed he never received copies of the loan documents until April 2009, plaintiff did not deny signing them when he obtained the loan. Had he read those documents, it would have been immediately clear that he was applying for and agreeing to a pay-option ARM loan similar to the one he had obtained a year earlier. "California law . . . requires that the plaintiff, in failing to acquaint himself or herself with the contents of a written agreement before signing it, not have acted in an objectively unreasonable manner. One party's misrepresentations as to the nature or character of the writing do not negate the other party's apparent manifestation of assent, if the second party had 'reasonable opportunity to know of the character or essential terms of the proposed contract.' [Citation.] If a party, with such reasonable opportunity, fails to learn the nature of the document he or she signs, such 'negligence' precludes a finding the contract is void for fraud in the execution. [Citation.]" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 423; see *Simpson v. Dalziel* (1902) 135 Cal. 599, 603 ["Natural curiosity, as well as business prudence, would have compelled him to make the inquiry, and his failure to make it was inexcusable negligence; and it is well settled in this class of cases that 'one will be presumed to have known whatever with reasonable diligence he might have ascertained concerning the fraud of which he complains'"].)

Plaintiff argues *Rosenthal* is distinguishable because he is seeking damages, not a declaration the loan is void. He relies on language in *Lynch v. Cruttenden & Co.* (1993) 18 Cal.App.4th 802, stating, "The general rule in California is that even in the absence of a fiduciary relationship plaintiff's failure to read a contract is excusable where reliance is placed on the misrepresentations of the other party." (*Id.* at p. 807.) This argument is unavailing. *Lynch* did not involve an action for damages. Also, *Rosenthal* criticized it and other authorities containing similar language, declaring they "state the rule of excuse too broadly. While some prior cases have held equitable relief, such as rescission or reformation of the contract, may be available despite the defrauded party's

failure to read the contract, our law is clear that misrepresentation does not render the contract *void* unless the misled party, before making the agreement, lacked a reasonable opportunity to learn its terms." (*Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 421.)  We also note the Supreme Court recently recognized the potential application of *Rosenthal's* holding to a case where the plaintiffs sought damages for the defendants' alleged misrepresentations that induced them to execute a contract. (*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1183, fn. 11.)

A review of the loan application or the title of the promissory note, both of which he signed, would have informed plaintiff the loan carried an adjustable interest rate.  Further, the paragraph just below the promissory note's title, printed in all capitals and bold lettering, would have alerted him to the fact the loan would negatively amortize if he only paid the minimum amount each month.  (See *Loeffler v. Wright* (1910) 13 Cal.App. 224, 231-232 [action to set aside signed deed held untimely; "it is not sufficient for the plaintiff to allege that he did not discover the fraud till a certain date" since "it must also appear as well that the discovery could not have been made by the exercise of reasonable diligence[ a]nd plaintiff is presumed to have known all that reasonable diligence would have disclosed"].)  Under the circumstances of this case, plaintiff's failure to read the loan documents before signing them bars him from asserting delayed discovery of the false representations by Doherty and Omen.

Plaintiff relies on *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356 for the proposition he was not required to read the loan documents in advance of signing them.  The case does not support his argument.  *Alfaro* involved an action by the purchasers of low and moderate income housing filed more than three years after the plaintiffs were issued grant deeds.  The properties were subject to a recorded restriction requiring that they remain affordable to persons with low to moderate incomes.  The grant deeds issued by one developer

9

expressly referred to the recorded restriction.  Only two deeds issued by a second developer expressly mentioned it.

The appellate court's opinion does state "a buyer's failure to read a deed may be excused by justifiable reliance on a seller's misrepresentations."  (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc., supra,* 171 Cal.App.4th at p. 1392.)  But the decision affirmed the dismissal of the action against the developers as to all of the grant deeds that "did disclose the deed restriction by express reference to the recorded document" because it "gave plaintiffs actual knowledge of the existence of the deed restriction and inquiry notice of the nature of the restriction."  (*Id.* at p. 1393.)

Plaintiff cites this court's decision in *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, where we reversed the dismissal of an action against a lender for failing to adequately disclose the terms of option-ARM loans.  In that case the trial court entered a judgment of dismissal after sustaining a demurrer to the plaintiffs' second amended complaint and the issue on appeal was whether the plaintiffs could state causes of action for fraud and violation of the UCL.  Here, there is no dispute that a cause of action can be stated.  The lower court overruled defendant's demurrer to the deceit and UCL counts.  Further, *Boschma* noted, "Plaintiffs' actual interest rates and monthly payments sufficient to amortize the loan . . . were hidden in the complexity of the Option ARM contract terms," and "'"[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.  There is no duty resting upon a citizen to suspect the honesty of those with whom he [or she] transacts business.  Laws are made to protect the trusting as well as the suspicious.  [T]he rule of *caveat emptor* should not be relied upon to reward fraud and deception."'"  (*Id.* at p. 249.)

In contrast, plaintiff could have learned the falsity of Doherty's and Omen's statements by merely reading the title of the promissory note he signed and the paragraph

10

directly below it.  He was not required to wade through a morass of complex language to realize his loan was not a fixed rate fully amortized loan.  Plaintiff's failure to read loan documents he does not deny signing was unreasonable and precluded his reliance on the delayed accrual rule in this case.

In addition, even assuming *Alfaro* and *Boschma* justified plaintiff in failing to read the loan documents before signing them, the result would be the same.  Plaintiff's prior verified federal complaint acknowledged he knew the loan was an option-ARM.  That pleading alleged defendant and Countrywide engaged in a pattern of activity where, to maximize profits from higher interest rates and fees, they induced borrowers to accept option-ARM loans by representing these loans were "better than a fixed rate loan."  This allegation is admissible to establish plaintiff knew or should have known that Doherty's and Omen's representations concerning the nature of the July 2006 refinance loan were false.  (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 871 ["On summary judgment such admissions are proper and overcome evidence even when the opposing party seeks to contradict the prior admission"]; see *Magnolia Square Homeowners Assn. v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1061.)

"[R]esolution of the statute of limitations issue is normally a question of fact, [but] where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper."  (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112.)  The trial court properly found plaintiff's causes of action for fraud and negligent misrepresentation barred by the statute of limitations.

### b.  *Justifiable Reliance*

The trial court also concluded plaintiff failed to show a triable issue of fact existed on the deceit counts' justifiable reliance element.  Again, we agree.

In an "action for intentional or negligent misrepresentation, a plaintiff must demonstrate that he or she actually and reasonably relied upon a representation made by

11

the defendant." (*Ostayan v. Serrano Reconveyance Co.* (2000) 77 Cal.App.4th 1411, 1419.) The question of whether a plaintiff reasonably relied on the defendant's alleged misrepresentation is one of fact unless "'the undisputed facts leave no room for a reasonable difference of opinion.'" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239.)

For the reasons discussed above concerning the statute of limitations defense, plaintiff cannot show a triable issue of fact existed on the element of justifiable reliance because he could have discovered the falsity of the representations by merely reading the loan documents. In *Hadland v. NN Investors Life Ins. Co.* (1994) 24 Cal.App.4th 1578, we affirmed the trial court's grant of nonsuit on the plaintiffs' fraud cause of action in a suit against their health insurer that was based on a sales associate's representation the defendant's policy "was 'as good if not better' than [their former] coverage . . . at half the premium cost" (*id.* at p. 1581), because at trial the plaintiffs acknowledged not reading the insurance policy before accepting it. "[A] comparison of [the defendant's] stated coverage with that offered by the [prior insurer's] policy would have revealed the [defendant's] policy offered less protection" (*id.* at p. 1588), and thus "any representations by defendants of . . . coverage 'as good or better' as the [prior] policy, were patently at odds with the express provisions of the written contract." (*Id.* at p. 1589.)

As noted, while plaintiff denied receiving the loan documents until much later, he never denied signing them. Where "the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, . . . he will be denied a recovery. [Citations.] 'He may not put faith in representations which are preposterous, or which are shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth . . . .' [Citation.]" (*Seeger v. Odell* (1941) 18 Cal.2d 409, 415.) Here, the "facts within [plaintiff's]

observation" would have shown the alleged statements by Doherty and Odell were "patently and obviously false."  (*Ibid.*)

The cases plaintiff relies on are inapposite.  *Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442 is factually distinguishable from *Hadland.*  (*Butcher, supra,* at p. 1465.)  Neither *Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260 nor *Paper Savers, Inc. v. Nacsa* (1996) 51 Cal.App.4th 1090 involved an action for fraud or negligent misrepresentation.  Further *Spray, Gould* rejected a claim of constructive notice because an insurance regulation required the insurer give actual notice.  Also, unlike *Paper Savers*, where the issue was the effect of the policy's terms, in this case by merely reading the promissory note's title and opening paragraph plaintiff would have realized his loan was a negatively amortizing adjustable rate loan.

We conclude the trial court properly held plaintiff failed to establish a triable issue of fact on the element of justifiable reliance as to the fraud and negligent misrepresentation counts.


*3.  The UCL Cause of Action*

The trial court granted summary judgment on plaintiff's UCL cause of action on two grounds.  It found the claim barred by the statute of limitations and, because plaintiff's complaint alleged defendant "acquired Countrywide . . . during January 2008," defendant could not be held liable "because UCL claims cannot be based on any sort of vicarious liability."

The parties' appellate briefs do not discuss the second ground cited by the trial court.  Since we conclude plaintiff's UCL claim is also untimely, we need not decide the correctness of the court's second ground.

A cause of action under the UCL is governed by a four-year statute of limitations.  (Bus. & Prof. Code, § 17208.)  But the Supreme Court has also held "the UCL is governed by common law accrual rules to the same extent as any other statute"

13

and "'the nature of the right sued upon' [citation] and the circumstances attending its invocation control the point of accrual." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1196.)

Plaintiff concedes his UCL cause of action "is entirely dependent on his claims for fraud and negligent misrepresentation." Thus, the wrongful conduct underlying it occurred in July 2006 when plaintiff applied for and accepted the $2.15 million pay-option ARM, meaning the statute of limitations expired in July 2010. Plaintiff did not file this action until February 28, 2011, seven months later. Further, as discussed above plaintiff failed to adequately plead facts or present evidence raising a triable issue of fact to show the delayed accrual doctrine applied in this case. Consequently, the trial court properly dismissed the UCL count on the ground plaintiff failed to timely file suit.

DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


BEDSWORTH, J.


MOORE, J.

14